IN THE UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| COMMONSPIRIT HEALTH, a Colorado corporation, <br><br> Plaintiff, <br><br> v. <br><br> HEALTHTRUST PURCHASING GROUP, L.P., a Delaware limited partnership; and HPG ENTERPRISES, LLC, a Tennessee limited liability company, <br><br> Defendants. | Case No. |

**COMPLAINT**

For its Complaint, Plaintiff CommonSpirit Health ("Plaintiff"), appearing through its undersigned counsel, alleges as follows based on present knowledge, information and belief:

**PARTIES**

1. Plaintiff CommonSpirit Health ("CommonSpirit"), f/k/a Catholic Health Initiatives ("CHI"), is a Colorado nonprofit corporation and a Catholic health system dedicated to advancing health for all people. CommonSpirit was created on February 2019 through the alignment of the healthcare ministries of CHI and Dignity Health ("Dignity") ("Ministry Alignment").

2. Plaintiff is informed and believes, and on that basis alleges, that Defendant HealthTrust Purchasing Group, L.P. ("HealthTrust") is a Delaware limited partnership with its principal place of business in Brentwood, Tennessee and which transacts business in the Middle District of Tennessee.

3. Plaintiff is informed and believes, and on that basis alleges, that Defendant HPG Enterprises, LLC ("HPG") is a Tennessee limited liability company with its principal place of business in Nashville, Tennessee and which transacts business in the Middle District of Tennessee.

**JURISDICTION AND VENUE**

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action exceeds the sum or value of $75,000 (exclusive of interest and costs), and is between citizens of different states. The Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 insofar as all claims alleged herein form part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over Defendants because (i) Defendants conduct business within the State of Tennessee and this judicial district; and (ii) Plaintiff and Defendants entered into the relevant agreements in this judicial district.

6. Venue lies in this District pursuant to a written contract.

**GENERAL ALLEGATIONS**

7. CHI had a long standing and broad relationship with HealthTrust, which is a group purchasing organization ("GPO"). The GPO functions as an entity to leverage the purchasing power of a group of healthcare providers to obtain discounts from vendors and negotiate prices for drugs, devices, and other medical products and services based on the collective buying power of the GPO members.

8. On or about January 1, 2016, CHI and HealthTrust entered into a written Participation Agreement (the "Participation Agreement") for the purposes of permitting CHI and its facilities to obtain certain products and services under vendor contracts between those vendors and HealthTrust in HealthTrust's role as a GPO. The Participation Agreement was also intended by the Parties to establish a business relationship that complies with the Medicare anti-kickback statute, set forth in 42 U.S.C. § 1320a-7b(b). A true and correct copy of the Participation Agreement is attached hereto as **Exhibit A**.

9. Pursuant to Section 4.7 of the Participation Agreement, HealthTrust was obligated to provide CHI with administrative fee payments of 80% of the GPO Fees received by HealthTrust from its vendors in connection with purchases under HealthTrust's vendor contracts by CHI and its facilities. HealthTrust was obligated to make these administrative fee payments to CHI on a monthly basis.

10. Pursuant to Section 4.10 of the Participation Agreement, HealthTrust was obligated to provide 5.166% of the Non-Partner Healthcare Products GPO Fees that exceed the amount of $26,991,088.00 in any calendar year to CHI, as a result of its concurrently entered into partnership agreement, discussed in more detail below. In addition, CHI was to receive 5.166% of the Non-Partner Business Products GPO Fees.

11. Pursuant to Section 6.1 of the Participation Agreement, CHI acknowledged that HealthTrust received payments from HealthTrust's vendors of fees for administrative and other services HealthTrust provided to the vendors based on products and services purchased by CHI known as GPO Fees. These payments generally ranged from less than 1% to 3%, but for certain vendors may have been as much as 4.5%.

12. Pursuant to Section 6.2 of the Participation Agreement, CHI obtained products and services from HealthTrust and its vendors, and received monthly rebate payments from HealthTrust.

13. CHI was obligated under Section 6.2 of the Participation Agreement to "accurately report, under any state or federal program that provides cost or charge based reimbursement for the Products and Services covered by [the Participation] Agreement, the net cost actually paid by [CHI] and/or Facility."

14. The Participation Agreement's Initial Term was set to end on January 1, 2021.

15. On or about January 1, 2016, CHI and HealthTrust also entered into the written Third Amended and Restated Limited Partnership Agreement of HealthTrust Purchasing Group

(the "Partnership Agreement"). HPG is the General Partner of the Partnership. A true and correct copy of the Partnership Agreement is attached hereto as **Exhibit B**.

16. Section 2.1 of the Partnership Agreement provided that it formed a limited partnership, known as Defendant HealthTrust.

17. The Partnership Agreement provided that CHI would receive dividends of non-partner business products GPO fees under Section 6.6 and Section 6.3(e)(ii), based on CHI's relative percentages of its interest from the Partnership.

18. Referring to the Participation Agreement, the Partnership Agreement provided that the rebates that HealthTrust received through purchases under the GPO's vendor contracts should be treated as earned by the participants, not by HealthTrust. The rebates were therefore the property of CHI.

19. On February 1, 2019, in connection with the Ministry Alignment, CHI became Dignity's sole corporate member, and CHI changed its name to CommonSpirit.

20. At the time of the Ministry Alignment, CHI had a contract with HPG as its GPO, but Dignity had a contract with Premier, Inc. ("Premier"), another GPO. One of the goals of the merger was to create economies of scale for Dignity and CHI as CommonSpirit.

21. CHI and Dignity had previously been using different GPOs, supply chain services, technologies, and industry experts to advise on performance improvement.

22. CommonSpirit was formed to provide high quality health services to the people who need them, especially in vulnerable communities. Key to achieving these goals was having one GPO, one set of tools, and an integrated data and analytics platform across the entity.

23. As the two organizations had joined to become CommonSpirit, effectively, CommonSpirit had two contracts with two GPOs.

24. CommonSpirit knew it needed a GPO partner who could help deliver operational efficiencies and drive financial performance, all while ensuring it could fulfill its mission and vision.

25. Therefore, in or around the beginning of 2019, CommonSpirit put out a Request for Proposals ("RFP") to the GPO companies that work with medical organizations of this size, including HPG and Premier, as CommonSpirit sought to integrate clinically its newly merged supply chain and pursue comprehensive operational efficiency and waste reduction.

26. HPG was reluctant to participate in the RFP process, and wrongly accused CommonSpirit of sharing confidential pricing information with the other GPOs in breach of the Participation Agreement and Partnership Agreement. Notwithstanding the foregoing, HPG did participate in the RFP process, including making an in person presentation to the CommonSpirit team during the period that the other GPOs made their presentations.

27. Other companies, including Premier, participated in the RFP process.

28. In or around the end of 2019, after a thorough review of the proposals submitted by the GPOs, CommonSpirit selected Premier to be its new GPO partner and provider at the end of the Participation Agreement's Initial Term, or January 1, 2021.

29. Plaintiffs selected Premier, in part, because it would analyze CommonSpirit's operations and identify opportunities to standardize, reduce waste, and improve care delivery. Through its performance improvement technology and analytics, Premier identified savings opportunities and created a roadmap for how CommonSpirit could realize opportunities, from supply chain initiatives to technology solutions.

30. Notwithstanding CommonSpirit's decision not to enter into further agreements with HPG, CommonSpirit intended to perform its obligations under the Partnership Agreement and Participation Agreement through the end of the Initial Term.

31. Plaintiffs are informed and believe, and on that basis allege, that Defendant HPG retaliated against CommonSpirit when it was not selected in the RFP process as CommonSpirit's GPO.

32. In or around February 2020, HPG cut off CommonSpirit's access to its computer system and web tools and gave CommonSpirit less than sixty days' notice that it would terminate

the Participation Agreement on March 31, 2020. Section 4.1 of the Participation Agreement set forth that Defendant HealthTrust was required to provide CommonSpirit with access to the HealthTrust website.

33. HPG's notice left CommonSpirit with less than sixty days to move in excess of one billion dollars of business, including informing all of the CHI locations that had been on HPG's "roster" of facilities that a shift would occur.

34. Further, due to the structure of the Participation Agreement between CHI and HPG, CHI was entitled to receive (i) dividends and rebate payments based upon GPO fees received by HPG from vendors in connection with CHI's purchases and (ii) administrative fee payments. Since CHI and HPG had entered into the Partnership Agreement and Participation Agreement in January 2016, customary practice was that these payments would trail the purchases for a period of months.

35. Pursuant to the Partnership Agreement, HPG was also obligated to make dividend payments to CHI.

36. Throughout CHI and HPG's relationship, CommonSpirit had an internal team that would monitor incoming payments from HPG based on information accessible on the HealthTrust website and enabled CommonSpirit to perform its obligation to report any reimbursements to the Center For Medicare and Medicaid Services ("CMS") and also to ensure that CommonSpirit was appropriately reimbursed by HPG pursuant to the terms of the Participation Agreement. When HPG cut off CommonSpirit's access to the HealthTrust website, CommonSpirit could not monitor the payments.

37. Pursuant to Section 6.2 of the Participation Agreement, Defendant HPG agreed to pay CommonSpirit rebates based on the purchases of products and services from HealthTrust's vendors

38. Notwithstanding the fact that HPG was not up to date with its contractually obligated dividend and administrative fee payments to CommonSpirit, HPG did not make the payments to CommonSpirit.

39. Plaintiff is informed and believes, and on that basis alleges, that Defendants have refused and continue to refuse to give Plaintiff (i) the contractually agreed upon administrative fees since in and around January 2020, (ii) the contractually agreed upon dividend payments since in and around September 2019, and (iii) any information as to such amounts due and owing that Defendants are required to provide to Plaintiff.

40. The facilities in CommonSpirit's network who routinely relied on CommonSpirit's relationship with HPG as its GPO have suffered uncertainty and disruption during this period.

## FIRST CLAIM FOR RELIEF

**(Breach of Contract – Participation Agreement against Defendant HealthTrust)**

41. Plaintiff repeats and re-alleges paragraphs 1-40 above, as if fully stated herein.

42. Plaintiff CommonSpirit and Defendant HealthTrust are parties to the Participation Agreement.

43. Plaintiff CommonSpirit performed all of its obligations under the Participation Agreement or has been excused from doing so as a result of Defendant HealthTrust's actions.

44. Defendant HealthTrust breached its obligations under the Participation Agreement by, among other things, the following:

(a) Section 4.1 of the Participation Agreement sets forth that Defendant HealthTrust was required to provide CommonSpirit with access to the HealthTrust website. Defendant materially breached the Participation Agreement by revoking CommonSpirit's access to the website since in or around February 2020.

(b) Pursuant to Section 4.7 of the Participation Agreement, HealthTrust was obligated to provide CHI with administrative fee payments of 80% of the GPO Fees received by HealthTrust from its vendors in connection with purchases under HealthTrust's vendor contracts by CHI and its facilities. HealthTrust was obligated to make these administrative fee payments to CHI on a monthly basis. HealthTrust refused to make these payments.

(c) Plaintiff CommonSpirit was to receive dividends of business products and healthcare products GPO fees. Pursuant to Section 4.10, HealthTrust was obligated to provide 5.166% of the Non-Partner Healthcare Products GPO Fees that exceed the amount of $26,991,088.00 in any calendar year to CHI. In addition, CHI was to receive 5.166% of the Non-Partner Business Products GPO Fees. Since in and around September of 2019, Defendants materially breached the Participation Agreement and the Partnership Agreement by failing to make these dividend payments to CommonSpirit.

45. The Participation Agreement has an implied duty of good faith and fair dealing in its performance and enforcement. Defendant HealthTrust was required to: (a) refrain from doing anything to jeopardize Plaintiff CommonSpirit's abilities to realize the benefits owed to them thereunder; (b) deal fairly and in good faith with Plaintiff CommonSpirit and (c) promptly and fairly carry out its obligations under the Participation Agreement.

46. Defendant HealthTrust materially and repeatedly breached the implied covenants of good faith and fair dealing by, among other things, engaging in the wrongful conduct alleged herein above, which conduct was purposefully aimed at and did frustrate and interfere with Plaintiffs' ability to realize the benefits of the Participation Agreement. Defendant failed to promptly and fairly carry out its obligations under the Partnership Agreement by breaching its material terms.

47. Section 10 of the Participation Agreement calls for the award of attorneys' fees to the prevailing party.

48. As a result of Defendant HealthTrust's material breaches of the Participation Agreement and its implied covenant of good faith and fair dealing, CommonSpirit has been damaged in an amount in excess of $30,000,000.00.

## SECOND CLAIM FOR RELIEF

**(Breach of Contract – Partnership Agreement against Defendants HealthTrust and HPG)**

49. Plaintiff repeats and re-alleges paragraphs 1-48 above, as if fully stated herein.

50. Plaintiff CommonSpirit and Defendants are parties to the Partnership Agreement.

51. Plaintiff CommonSpirit performed all of its obligations under the Partnership Agreement or has been excused from doing so as a result of Defendants' actions.

52. The Partnership Agreement provided that CHI would receive dividends of non-partner business products GPO fees under Section 6.3(e)(ii), based on CHI's relative percentages of its interest. Since in and around September of 2019, Defendants materially breached the Partnership Agreement by failing to make the dividend payments to CommonSpirit.

53. Referring to the Participation Agreement, the Partnership Agreement provided that the rebates that HealthTrust received through purchases under the GPO's vendor contracts should be treated as earned by the participants, not by HealthTrust. The rebates were therefore the property of CHI. CommonSpirit is informed and believes that since in and around January of 2020, Defendants materially breached the Partnership Agreement by, among other things, failing to make these rebate payments to CommonSpirit.

54. The Partnership Agreement implies a duty of good faith and fair dealing in its performance and enforcement. Defendants were required to (a) refrain from doing anything to jeopardize Plaintiff CommonSpirit's abilities to realize the benefits owed to them thereunder; (b) deal fairly and in good faith with Plaintiff CommonSpirit; and (c) promptly and fairly carry out their obligations under the Partnership Agreement.

55. Defendants materially and repeatedly breached the implied covenants of good faith and fair dealing by, among other things, engaging in the wrongful conduct alleged herein above, which conduct was purposefully aimed at and did frustrate and interfere with Plaintiffs' ability to

102505025.1

-9-

Case 3:21-cv-00460   Document 1   Filed 06/10/21   Page 9 of 13 PageID #: 9

realize the benefits of the Partnership Agreement. Defendant failed to promptly and fairly carry out its obligations under the Partnership Agreement by breaching its material terms.

56. As a result of Defendants' material breaches of the Partnership Agreement and its implied covenants of good faith and fair dealing, CommonSpirit has been damaged in excess of this Court's jurisdictional limit.

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty against Defendants HealthTrust and HPG)

57. Plaintiff repeats and re-alleges paragraphs 1-56 above, as if fully stated herein.

58. A partnership is a fiduciary relationship, and partners have an obligation to uphold the duties of loyalty and care in their dealings with one another with respect to partnership affairs.

59. Section 61-1-404(b)(1) of the Tennessee Code Annotated provides that the duty of loyalty requires Defendants to hold for Plaintiff – as a trustee – any property, profit, or benefit derived by the partner.

60. Section 61-1-404(c) of the Tennessee Code Annotated requires that partners exercise the duties of loyalty and care between each other. Section 61-1-404(c) requires partners to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law in the member's dealings with other partners.

61. Defendants have intentionally breached this duty by refusing to turn over Plaintiff's property to them, including their distribution and rebate payments.

62. As a result of Defendants' breach of fiduciary duties, Plaintiff has been damaged in an amount in excess of this Court's jurisdictional limit.

63. Defendants' acts were fraudulent, malicious, unconscionable and oppressive, and were undertaken with conscious disregard for Plaintiff's well-being. Defendants' actions entitle Plaintiff to an award of exemplary and punitive damages in an amount appropriate to punish or

make an example of Defendants, according to proof at trial.

## FOURTH CLAIM FOR RELIEF

### (Conversion against Defendants HealthTrust and HPG)

64. Plaintiff repeats and re-alleges paragraphs 1-63 above, as if fully stated herein.

65. At all times mentioned herein, Plaintiff was and still is the rightful owner of specific rebate and distribution payments, and are entitled to possession of that property.

66. Plaintiff is informed and believes, and thereon alleges, that Defendants have converted the same property to their own use.

67. Plaintiff has demanded the return of the above-mentioned property, and Defendants have refused to return it.

68. As a direct and proximate result of Defendants' conversion, Plaintiff has suffered monetary harm, both general and consequential damages, in an amount to be determined at trial but in excess of the Court's jurisdictional amount.

69. At all times, Defendants, and each of them, knew of the probable consequences of their acts and omissions but deliberately failed to avoid these consequences.

70. Defendants' acts were fraudulent, malicious, unconscionable and oppressive, and were undertaken with conscious disregard for Plaintiff's well-being. Defendants' actions entitle Plaintiff to an award of exemplary and punitive damages in an amount appropriate to punish or make an example of Defendants, according to proof at trial.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief against Defendant HealthTrust)

71. Plaintiff repeats and re-alleges paragraphs 1-70 above, as if fully stated herein.

72. An actual controversy has arisen and now exists between Plaintiff and Defendant. As described above, Plaintiff contends that Defendant wrongfully and in direct violation of the Participation Agreement has refused to pay Plaintiff CommonSpirit the rebate, administrative

fee, and dividend payments to which it is entitled.

73. Thus, Plaintiff desires a judicial determination of the rights and duties of CommonSpirit and a declaration that Defendant is violating the Participation Agreement by not making the rebate and distribution payments to Plaintiff.

## SIXTH CLAIM FOR RELIEF

**(Declaratory Relief against Defendants HealthTrust and HPG)**

74. Plaintiff repeats and re-alleges paragraphs 1-73 above, as if fully stated herein.

75. An actual controversy has arisen and now exists between Plaintiff and Defendants. As described above, Plaintiff contends that Defendants wrongfully and in direct violation of the Partnership Agreement have refused to pay Plaintiff CommonSpirit the rebate, administrative fee, and dividend payments to which it is entitled.

76. Thus, Plaintiff desires a judicial determination of the rights and duties of CommonSpirit and a declaration that Defendants are violating the Partnership Agreement by not making the rebate and distribution payments to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment as follows:

1. For damages in an amount to be proved at trial and not less than $30,000,00.00;

2. For attorneys' fees as to the breach of contract claims for relief;

3. For a declaration that Defendants violated the Participation and Partnership Agreements by wrongfully withholding rebate, administrative fee, and dividend payments from Plaintiff;

4. For punitive damages as to the conversion and breach of fiduciary duty claims for relief only;

5. For costs of suit; and

6. For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Respectfully submitted this 10th day of June, 2021.

        */s/ Victor J. Domen, Jr.*
Victor J. Domen Jr. (TN SBN 015803)
NORTON ROSE FULBRIGHT US, LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone:(202) 662-0200
*vic.domen@nortonrosefulbright.com*

James H. Turken (CA SBN 89618)
Rebecca Lawlor Calkins (CA SBN 195593)
Neil P. Thakor (CA SBN 308743)
Kelly L. Doyle (CA SBN 326230)
NORTON ROSE FULBRIGHT US, LLP
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone:(213) 892-9200
Facsimile: (213) 892-9494
*james.turken@nortonrosefulbright.com*
*rebecca.calkins@nortonrosefulbright.com*
*neil.thakor@nortonrosefulbright.com*
*kelly.doyle.dahan@nortonrosefulbright.com*

*Attorneys for Plaintiff COMMONSPIRIT HEALTH*