IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| COMMONSPIRIT HEALTH, | ) | |
| | ) | |
| Plaintiff/Counter-defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:21-cv-00460 |
| HEALTHTRUST PURCHASING | ) | |
| GROUP, L.P., and | ) | |
| HPG ENTERPRISES, LLC, | ) | |
| | ) | |
| Defendants/Counterclaimants. | ) | |

---

## JOINT DISCOVERY DISPUTE STATEMENT

---

Pursuant to Local Rule 37.01(b), Defendants/Counterclaimants HealthTrust Purchasing Group, L.P. and HPG Enterprises, LLC (collectively, "HealthTrust") and Plaintiff/Counter-defendant CommonSpirit Health ("CommonSpirit") hereby submit this Joint Discovery Dispute Statement regarding issues with CommonSpirit's responses to HealthTrust's discovery requests. (Exhibit 1).

HealthTrust provided CommonSpirit with a letter identifying deficiencies in CommonSpirit's initial responses and document production on May 2, 2022. (Exhibit 2). Counsel conferred by telephone on May 4 (*see* Exhibit 3), and again at length over Zoom regarding these deficiencies on May 12 and May 16, 2022. Counsel for HealthTrust summarized those discussions in a letter of May 19, 2022. (Exhibit 3). As discussed herein, numerous deficiencies remain with CommonSpirit's supplemental responses and document production, requiring the Court's resolution.

## I.      HealthTrust's Position

The parties had agreed to respond to initial discovery requests and to substantially complete their productions by April 21, 2022. On that date, HealthTrust complied, producing over 12,000 documents and responding substantively to all of CommonSpirit's interrogatories. CommonSpirit, on the other hand, produced only 30 documents and improperly objected to and refused to produce documents responsive to 23 (out of 30) Requests for Production, 8 (out of 19) Interrogatories, and 8 (out of 12) Requests for Admission.[1]

Despite lengthy subsequent conferences between Counsel, CommonSpirit's discovery responses remain deficient, as summarized immediately below.

### A.      Despite the two-tiered Protective Order, CommonSpirit refuses to produce documents that it contends contain "third-party" information.

CommonSpirit objects to at least thirteen Requests for Production[2] on the ground that the Requests "seek documents that include the confidential, proprietary, and sensitive business information and/or trade secrets of a third party or entity including direct competitors to Defendants" and purports to refuse to produce any documents that contain any such information. CommonSpirit makes this remarkable objection to requests seeking documents relating to communications with vendors or Premier about HealthTrust's confidential pricing.

---

[1] Specifically, CommonSpirit refused to search for documents responsive to Requests for Production 1–10, 12–17, 19–21, 23–27, and 30, refused to answer Interrogatory Numbers 1–3, 10, 14, 16, and 18–19, and refused to answer Requests for Admission Numbers 2–7, and 9–10.

[2] *See* Supp. Resp. to RFP Nos. 6, 7, 8, 11, 12, 13, 14, 16, 25, 26, 27, 28, and 29.

CommonSpirit cannot shield documents regarding its misappropriation of this confidential information on the ground that the documents might also confidential information of a third party. These documents are relevant and not privileged. *See* Fed. R. Civ. P. 26(b)(1) And the parties have already agreed to a two-tier Protective Order (ECF 49) that permits designating materials attorney's eyes only. The law is clear that CommonSpirit must produce these documents.[3]

### B. CommonSpirit has failed to search for and produce responsive documents, or to log any documents withheld on the basis of privilege.

The parties agreed to complete document productions and provide privilege logs by June 3, 2022 (subsequently extended at CommonSpirit's request to June 6, 2022). HealthTrust honored this agreement, completing its production (of over 13,000 documents) and providing a detailed privilege log. CommonSpirit, on the other hand, has produced only 673 documents and has not provided any privilege log.

It is self-evident that CommonSpirit's production is woefully incomplete. Although the number and character of proposed initial custodians and search terms were similar, CommonSpirit produced only 290 emails total while HealthTrust has produced 4,735. And these communications decidedly do not include critical

---

[3] *See, e.g., Clark v. Phx. Homes, Inc.*, 2010 U.S. Dist. LEXIS 163559, at *17 (M.D. Tenn. July 23, 2010) ("[U]nder Fed. R. Civ. P. 26(b)(1), Plaintiffs 'may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. …' *If the materials sought are not privileged, but are only confidential, they are discoverable under Rule 26(b)(1), subject to an appropriate Protective Order that will ensure their confidentiality of the materials.*") (emphasis added); *United States ex rel. Goodman*, 2020 U.S. Dist. LEXIS 262048, at *16 (M.D. Tenn. Sep. 21, 2020) (ordering a party to produce sensitive confidential documents in accordance with the terms of the "Protective Order entered by the Court … and subject to all restrictions on use and sharing of the documents").

communications with third parties: for example, CommonSpirit has produced only seven emails between itself and Premier, and only ten emails from the CommonSpirit executive ostensibly in charge of the "transition" by CommonSpirit from the HealthTrust to the Premier GPO.

As just one specific example, the Court has already found that Exhibits 5 and 6 to the Counterclaim—the supplier template sent by Premier to vendors, with a copy to a CommonSpirit employee (and ESI custodian) Shane Pederson—is indicative that CommonSpirit was misappropriating HealthTrust trade secret information.[4] Yet, CommonSpirit has not produced that email itself, let alone any emails referring or relating to it.

It matters not whether CommonSpirit's failure to provide a complete document production is a result of (a) CommonSpirit's improper confidentiality objections[5], (b) its unfounded, boilerplate assertions of "overbreadth,"[6] (c) its untimely (and unavailing) boilerplate relevance objections[7], or (d) its purported "reasonable

---

[4] *See* ECF No. 73, at 11–12.

[5] *See* Section A, *supra*.

[6] *See* Ex. 1, Supp. Resp. to RFP Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 22, 23.

[7] *See* Ex. 1, Supp. Resp. to RFPs Nos. 1, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29; *Id.*, Supp. Resp. to RFP Nos. 2, 3, 4, 6, 7, 8 (in which CommonSpirit objected to requests as seeking information not "reasonably" related to any party's claims or defenses). Among other documents, CommonSpirit purports to refuse to produce a copy of its agreement with Premier or documents sufficient to show the consideration that CommonSpirit has received from Premier (*see* RFP Nos. 5 and 21) even though such documents are relevant to, *inter alia*, HealthTrust's counterclaim damages. *See* 18 U.S.C. § 1836(b)(3)(B)(ii) (providing for an award of "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss").

interpretation" of HealthTrust's requests[8]. None of those objections, separately or together, complies with Rule 34(b)(2), which requires: "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objection to the request, including the reasons."

### C.    CommonSpirit failed to answer several Requests for Admission.

Under Rule 36(a)(4), if a matter is not admitted, the answer must "specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36.[9]

CommonSpirit initially refused to answer eight of HealthTrust's twelve Requests for Admission on the basis of boilerplate objections that did not constitute the specific denial, admittance, or detailed statement required by Rule 36(a)(4). CommonSpirit committed in subsequent conferences between counsel to admit or deny RFA Nos. 2, 3, 4, 5, 6, and 10.[10] Despite that agreement, CommonSpirit

---

[8] *See* Ex. 1, Supp. Resp. to RFPs Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, 20, 25, 26, 27, 28, and 29).

[9] An answer to a request for admission must "fairly respond to the substance of the matter." *Rehberger v. Honeywell Int'l, Inc.*, 2012 U.S. Dist. LEXIS 28587, at *3 (M.D. Tenn. Mar. 5, 2012).

[10] *See* Ex. 3, at 3. HealthTrust reminded CommonSpirit that "any answers that do not make it clear whether and to what extent an objection is limiting the scope of the answer is not appropriate. HealthTrust is entitled to clear admissions or denials— not admissions or denials 'subject to' a host of objections that leave the record unclear what CommonSpirit is admitting or denying." *Id.*

continues to assert boilerplate objections of vagueness and ambiguity, and purports to respond to the RFAs "subject to" those objections, making it unclear whether CommonSpirit is admitting or denying the requests on a technicality.[11]

For example, RFA Number 6 asks to admit "that CommonSpirit agreed to become a member of Premier prior to January 1, 2021." CommonSpirit objected that the terms "CommonSpirit" and "agreed" were vague, and then purported to admit only, subject to those objections, that "prior to January 1, 2021, it was determined by certain personnel at CommonSpirit that CommonSpirit would become a member of Premier at some undetermined time in the future, including potentially after January 1, 2021." This evasive non-answer does not constitute a sufficiently specific admission or denial.

As another example, RFA Number 7 asked CommonSpirit to admit that it "understood that, under the Participation Agreement, the pricing under the HealthTrust Vendor Contracts was confidential information." Notwithstanding that this RFA goes directly to HealthTrust's counterclaims, CommonSpirit purports to object that it is "not relevant to any party's claims or defenses." CommonSpirit also objects that the word "CommonSpirit" is "vague and ambiguous particularly as to the term 'CommonSpirit,' in this context as CommonSpirit is an entity that cannot have

---

[11] *See, e.g.*, *Medtronic Sofamor Danek, Inc. v. Michelson*, 2004 WL 179310, at *2 (W.D. Tenn. Jan. 2, 2004) ("Rule 36(a) directs the party answering a request for admission to 'specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.'" Fed. R. Civ. P. 36(a). The same rule gives the court the discretion to deem as admitted any answer that fails to comply with th[at] requirement ... . *Id.*").

an 'understanding.'" And CommonSpirit objects that this RFA is somehow "vague and ambiguous particularly as to the term 'the pricing under the HealthTrust Vendor Contracts' and 'confidential information.'" None of those objections has merit.

As a third example, RFA Number 8 asked CommonSpirit to admit that it "shared pricing information from HealthTrust Vendor Contracts with Premier." CommonSpirit continues to stand on a host of patently boilerplate and inappropriate objections—including that this request somehow is not proportional to the needs of the case or purports to impose obligations greater than those set forth in the Federal Rules—and then denies the RFA "subject to" those objections. In doing so, CommonSpirit fails to provide any explanation as to whether CommonSpirit denied this Request because of one of its boilerplate objections or because CommonSpirit actually denied the Request.

### D. CommonSpirit provided incomplete and evasive responses to several Interrogatories.

CommonSpirit must give full and complete answers in responding to Interrogatories. *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.")[12] Despite having been shown the numerous deficiencies in its responses and

---

[12] The answer to an interrogatory "should be complete in itself … ." *In re Envision Healthcare Corp. Sec. Litig.*, 2020 U.S. Dist. LEXIS 213302, at*6 (M.D. Tenn. Nov. 16, 2020). A party must "make a reasonable effort to answer interrogatories." *Jones v. Am. River Transp. Co.*, 2020 WL 7865326, at *4 (W.D. Tenn. June 17, 2020).

committing to correct those deficiencies, CommonSpirit refuses to provide complete answers to Interrogatory Numbers 9 and 10.[13]

Interrogatory No. 9 asked CommonSpirit to explain the relationship between CommonSpirit, Catholic Health Initiatives, and Dignity Health (referenced in Paragraph 1 of CommonSpirit's Complaint) and to include identifying documents establishing this relationship and its effective date. CommonSpirit objects to this Interrogatory as somehow being "overbroad and compound," and refuses to identify any documents establishing the purported relationship among and between the entities. It is inconceivable that no such documents exist.

Interrogatory No. 10 asked CommonSpirit to "[explain] why CommonSpirit requested that Section 7.3 of the Participation Agreement be amended to read 'Participant shall have the right to terminate this Agreement in its entirety… For convenience at any time upon sixty (60) calendar days' prior written notice to HPG.'" Although CommonSpirit agreed to supplement this response to answer the question, it has refused to do so, stating instead only that CommonSpirit extended a proposal to amend the Participation Agreement without explaining *why*.

CommonSpirit's failure to provide full and complete answers should be treated "as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).[14]

\*       \*       \*       \*

---

[13] *See* Ex. 3, at 2.

[14] *See Boyte v. Wilkie*, 2018 U.S. Dist. LEXIS 171914, at \*6 (M.D. Tenn. Oct. 4, 2018) ("An incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond") (internal citations omitted).

HealthTrust respectfully requests a telephone conference with the Court at the Court's earliest convenience to address these deficiencies. At that conference, CommonSpirit should be ordered to withdraw its invalid objections, search for and produce documents responsive to all of HealthTrust's document requests, provide complete answers to HealthTrust's Interrogatories No. 9 and 10, and be deemed to have admitted the above-discussed Requests for Admission, along with such other and further relief that the Court deems appropriate under Rule 37.

## II.    COMMONSPIRIT'S POSITION

CommonSpirit has responded to Defendants' discovery requests in good faith and in a manner entirely consistent with the Federal Rules of Civil Procedure and unambiguous case law.[15]  Further, CommonSpirit has consistently urged Defendants to engage in meaningful meet and confer calls in an effort to resolve any disputes informally and without burdening the court, particularly given the fact that the discovery cutoff is still over seven months away.  (Declaration of Rebecca Lawlor Calkins ["Calkins Decl."] Exhibits A, B.)  Defendants however have steadfastly refused to recognize any deficiencies in their requests and refused to work with CommonSpirit to tailor them in any way in order to bring them into compliance with the Federal Rules.

---

[15]    Defendants complain about CommonSpirit's document production but CommonSpirit has produced nearly 2,000 pages of documents plus video thus far. CommonSpirit expects to have its production complete very soon, and likely before the Court holds a conference regarding the present Joint Statement.

—9—

CommonSpirit nonetheless provided lengthy supplemental responses to Defendants' deficient Requests, despite the fact that "responses need not be required where the requests are replete with such deficiencies." *Moore v. Rees*, 2007 U.S. Dist. LEXIS 23844 at *49, citing *Diederich v. Department of Army*, 132 F.R.D. 614, 619 (S.D.N.Y 1990). "Requests that are vague, susceptible of more than one interpretation, combine fact, conclusion, and argument, require lengthy explanations before they can fairly be answered, or require inference, defeat the goals" of the Federal Rules and are "properly objectionable." *Moore v. Rees*, 2007 U.S. Dist. LEXIS 23844 at *51, citing *Honeycutt v. First Fed. Bank*, 2003 U.S. Dist. LEXIS 3629, W.D.Tenn. 2003).

Defendants' Requests suffer from all of these deficiencies yet CommonSpirit still responded. Defendants however, seemingly intent on involving the Court, have initiated the present Joint Statement anyway. Notably absent from Defendants' portion however, is virtually any substantive analysis or applicable authority for their position.[16] For example, Defendants' entire "analysis" in support of Defendants' position that CommonSpirit's Response to RFA No. 6 is insufficient, consists of a single sentence "This evasive non-answer does not constitute a sufficiently specific

---

[16] Defendants' entire "analysis" in support of Defendants' position that CommonSpirit's Response to RFA No. 6 is somehow insufficient, consists of a single sentence "This evasive non-answer does not constitute a sufficiently specific admission or denial." (Joint Statement, p. 6). Defendants' "analysis" regarding CommonSpirit's Response to RFA No. 7 demonstrates even more brevity: "[n]one of those objections has merit." (Joint Statement, p. 7). And Defendants' entire "analysis" of CommonSpirit's Response to RFA No. 8 is the complaint that CommonSpirit denies the RFA "subject to" its objections, a response specifically contemplated by the Fed. Rules of Civ. Proc. 36 and clear case authority.

admission or denial." (See Joint Statement, p. 6). Defendants' "analysis" regarding CommonSpirit's Response to RFA No. 7 is delivered in six words: "[n]one of those objections has merit." (Joint Statement, p. 7). And Defendants' entire "analysis" of CommonSpirit's Response to RFA No. 8 boils down to the complaint that CommonSpirit denied the RFA subject to its proper objections, a response specifically contemplated by the Fed. Rules of Civ. Proc. 36 and clear case authority.[17] Defendants' remaining complaints similarly suffer from a lack of analysis and support for the extreme relief requested (i.e. CommonSpirit should be ordered to withdraw its objections, produce documents containing the trade secret and proprietary information of Defendants' direct competitors Premier and Vizient, add to an already sufficient verified Response to Interrogatory No. 9 with ill-described and unnecessary corporate documents, and adopt Defendants' inaccurate characterization of facts in its Response to Interrogatory No. 10). The Federal Rules and case law simply do not support granting the relief sought by Defendants on the facts or proceeding at hand. This Court should deny Defendants' Requests and instruct Defendants to tailor their Request to conform with the Federal Rules. [18]

---

[17] Defendants' "analysis" of CommonSpirit's Responses to RFA Nos. 2, 3, 4, 5, 6, and 10 consists of merely listing the identifying numbers of the RFAs and then complaining in wholesale manner and no individual analysis that CommonSpirit responded "subject to its objections." (Joint Statement, p. 5). As discussed further *infra*, however, such a response is specifically contemplated and proper pursuant to Fed. R. Civ. P. 36 and overwhelming case authority.

[18] Defendants make the outrageous assertion that "the Court has already found that Exhibits 5 and 6 of the Counterclaim … is indicative that CommonSpirit was misappropriating HealthTrust trade secret information" citing to pages 11-12 of the Court's denial of CommonSpirit's Motion to Dismiss. (Defendants' Portion of Joint Statement at p. 4, paragraph 2). **But the Court made no such finding.** To the

### A.  HealthTrust Refused to Tailor Its Defective RFAs And CommonSpirit Objected and Responded In Good Faith And Consistent With the Federal Rules and Case Authority.

Defendants' assert, contrary to Fed. R. Civ. P. 36 and case authority that CommonSpirit's responses to Defendants' poorly drafted, vague and ambiguous Requests for Admission, are somehow improper because they are subject to CommonSpirit's valid objections. (See Defendants' portion of Joint Statement at pgs. 5-6 "CommonSpirit continues to assert boilerplate objections of vagueness and ambiguity, and purports to respond to the RFAs "subject to" those objections…". )

In its May 10, 2022 letter, CommonSpirit pointed out that most of Defendants' written discovery requests were deficient and unanswerable as drafted, and urged Defendants to reconsider their prior refusal to meet and confer to attempt to resolve any disputes informally and without court intervention. (Calkins Decl., Exh. A). CommonSpirit's repeated requests for a meaningful meet and confer arose from the hope of reaching agreement on tailoring Defendants' discovery requests to remove obvious defects such as vagueness and ambiguity.

---

contrary, the Court concluded that **"HealthTrust's factual allegations are not strong or particularly detailed**" and later again emphasized that **"[HealthTrust's] allegations in the Counterclaims are not particularly robust**." ECF 73 pgs. 12, 17. HealthTrust's mischaracterization of the Court's own memorandum only underscores the propriety and importance of CommonSpirit's objections to Defendants' discovery requests, including where they are vague and ambiguous.

While Defendants ultimately agreed to CommonSpirit's request to meet and confer, Defendants refused to tailor any of their written discovery requests in any way. Given Defendants' refusal, CommonSpirit stated that it would respond in good faith based on its "reasonable and proportional interpretation of each of Defendants' Interrogatories, Requests for Production, and Requests for Admission" a proper position that CommonSpirit articulated in both its May 10, 2022 and May 20, 2022 meet and confer correspondence. (Calkins Decl., Exhs. A, B.) Defendants' counsel confirmed their understanding that this would be consistent with the Federal Rules of Civil Procedure.[19] Despite this, Defendants now complain without explanation or analysis, that CommonSpirit has included objections in its Responses to Defendants RFAs, ignoring the validity of the objections as well as the fact that responses subject to objection are entirely consistent with the Fed. Rules of Civil Procedure, case authority, and the parties' understanding.

### 1. CommonSpirit's Responses to Defendants' Requests for Admission Comply With Rule 36.[20]

Rule 36 requires that Requests for Admission be simple and direct. Parties are not required to admit or deny requests that consist of statements that are vague or ambiguous. *Moore v. Rees,* 2007 U.S. Dist. LEXIS 23844 at

---

[19] Specifically, Benjamin Block confirmed this understanding during the parties' two meet and confer calls.

[20] It is unclear if Defendants are seeking to have admitted only Requests for Admission 6, 7, and 8, or if Defendants are also seeking to have admitted Requests Nos. 2, 3, 4, 5, 6, and 10 despite only listing the latter RFAs with virtually no further discussion or analysis.

*47 citing Moore's Federal Practice Civil § 36.10[6]. The requesting party bears the burden of drafting the request clearly and specifically so that the responding party can easily agree or disagree. *Id.*

Rule 36 expressly contemplates that a responding party may qualify its answer to address any ambiguity introduced by the proponents statement to be admitted or denied but this should be the exception and not the rule, as responses need not be required where the requests are replete with such deficiencies. *Moore v. Rees,* 2007 U.S. Dist. LEXIS 23844 at *49, citing *Diederich v. Department of Army,* 132 F.R.D. 614, 619 (S.D.N.Y. 1990). Requests that are vague, susceptible of more than one interpretation, combine fact, conclusion, and argument, require lengthy explanations before they can fairly be answered, or require inference, defeat the goals of Rule 36 and are properly objectionable. *Moore v. Rees*, 2007 U.S. Dist. LEXIS 23844 at *51 citing *Honeycutt v. First Fed. Bank*, 2003 U.S. Dist. LEXIS 3629, W.D.Tenn. 2003).

If the responding party cannot simply admit the matter stated in the request without some explanation or qualification, the responding party may admit with qualification. An admission may require qualification when the request is ostensibly true, but the responding party cannot in good faith admit it without some necessary contextual explanation to remedy any improper inferences. Moore's Federal Practice § 36.11[5][a].

Alternatively, a party may choose to deny only part of the request. The responding party may then, in good faith, qualify its answer or deny only part of a matter. In that case, the responding party must state specifically the part admitted and deny (or qualify) the rest. Moore's Federal Practice § 36.11[5][b]. Where the requests generally suffer from vagueness or repeatedly require the respondent to qualify its answer, compelling responses would frustrate rather than further the goals of Rule 36. *Moore v. Rees*, 2007 U.S. Dist. LEXIS 23844 at *49. When good faith requires that a party qualify an answer or deny only part of a matter, the answer must specify the part admitted and qualify or deny the rest.. Moore's Federal Practice §36.11[5][a]. This is precisely what CommonSpirit has done.[21]

"Rule 36 should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation." *Hollis v. Ply-Trim, Inc.*, at *9, citing *Johnstone v. Cronlund*, 25 F.R.D. 42, 45 (E.D.Pa.1960). Fed. R. Civ. P. 36(a)(4) provides with respect to a party's responsibilities in responding to requests for admission:

> If a matter is not admitted, the answer must specifically
>
> deny it or state in detail why the answering party cannot

---

[21] The purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested." *Hollis v. Ply-Trim, Inc.* 2009 U.S. Dist. LEXIS 143700 *9, citing *Webb v. Westinghouse Elec Corp.*, 81 F.R.D. 431, 436 (E.D. Pa.1978). "[T]he statement of the fact itself should be in simple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification." *Hollis v. Ply-Trim, Inc.* citing *Havenfield Corp. v. H&R Block, Inc.*, 67 F.R.D. 93, 96 (W.D. Mo.1973).

truthfully admit or deny it.  **A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.**" Fed. R. Civ. P. 36(a)(4). *Schmalz, Inc. v. Better Vacuum Cups, Inc.,* 2017 U.S. Dist. LEXIS 154260 at \*4 (Emphasis in original.)

The holding in *Schmalz, Inc. v. Better Vacuum Cups, Inc.* is informative. Plaintiff Schmalz, like CommonSpirit in the present case, denied defendants' requests for admission subject to its objections.[22]  Schmalz argued that the Court should reject the defendants' request to "engage in fact finding" and let Schmalz' answers stand as asserted.  The court *agreed* with Schmalz, noting that "[c]ourts have concluded that the ability to move to determine the sufficiency of answers and objections does not entitle one to request that a court determine the accuracy of a denial."[23]  The court found that Schmalz *properly "qualified its responses based on its understanding of the terminology* used in the requests and *properly stated its objection as to the vagueness of the terms*.  Beyond that, the great weight of authority indicates that Courts are not in the business of determining the accuracy of denials of requests for admission." Schmalz at \*4-\*5.  (Emphasis added).

---

[22] This is precisely what CommonSpirit has done in its Responses to Defendants' RFAs.

[23] Specifically, it does not entitle one to request that requests be deemed admitted.

Where the parties in Schmalz interpreted the term "separately patented" differently, the court concluded that even though the interpretations were "within shades of one another" Schmalz was entitled to stand on its proper and timely objections because the requests were vague and sought a legal conclusion. Schmalz' denials subject to its objections therefore, were proper and did *not run* afoul of Rule 36. "Schmalz qualified its answers and its objections appeared justified." Schmalz, Inc. v. Better Vacuum Cups, Inc. 2017 U.S. Dist. LEXIS at *8.[24]

Similarly, in *Michael v. Wes Banco Bank, Inc.*, 2006 U.S. Dist. LEXIS 40585, Plaintiff requested that the Court determine the sufficiency of answers and responses to Plaintiff's Requests for Admissions. The court noted that the Federal Rules permit "a good faith qualified admission that admits certain matters, if possible, but denies or gives a qualified answer to the rest." *Id.*, citing Fed. R. Civ. P. 36 (a).

Here, Defendants never explain specifically why CommonSpirit's objections and responses are improper. Defendants complain generally and without specificity that "CommonSpirit continues to assert boilerplate objections of vagueness and ambiguity, and purports to respond to the RFAs

---

[24] Schmalz similarly objected to BVC's two requests seeking admission that the Schmalz products were sold without restriction. Schmalz objected to the requests as "unclear, irrelevant, and for lack of understanding of the meaning of the terms with and without restriction" and then, subject to its objections, responded with denials. The court found that "Schmalz' qualifications and objections to these two requests are well-taken, and the denials in this case cannot be contested in the manner advocated by BVC." *Schmalz* at *9.

'subject to' those objections." But the FRCP and case law are clear: stating valid objections and then admitting or denying subject to those objections is entirely proper.

CommonSpirit's Response to RFA No. 6: Defendants do provide a superficial summary of CommonSpirit's Response to Defendants' RFA Nos. 6, 7, and 8 however the entirety of Defendants' argument regarding CommonSpirit's response to RFA No. 6 is a one line conclusion "[t]his evasive non-answer does not constitute a sufficiently specific admission or denial." Defendants provide no authority for the notion that the extreme relief of deeming an RFA admitted based on what appears to be an assertion of insufficient answers and objections, particularly absent any analysis or showing of insufficiency, is in any way proper. Indeed, the case law clearly holds otherwise.

Defendants also ignore the obvious deficiencies in RFA No. 6 which asks CommonSpirit to "Admit that CommonSpirit agreed to become a member of Premier prior to January 1, 2021."[25] The RFA can obviously be read as asking CommonSpirit to admit that an *agreement* occurred prior to January 1, 2021 for CommonSpirit to become a member of Premier on some undetermined future date *after* January 1, 2021. Or, the RFA could be read as asking CommonSpirit to admit that it agreed on some undetermined date to become

---

[25] Defendants' Count IV is Breach of Contract – Exclusivity. The date CommonSpirit actually became a member of Premier

a member of Premier with an *effective date of membership prior* to January 1, 2021. In other words, does "prior to January 1, 2021" refer to the "agreement" or to "becoming a member." As Defendants' Count IV is Breach of Contract – Exclusivity, the distinction is important in this case.

And further underscoring the fundamental defective nature of this RFA, Dignity Health, with whom Catholic Health Initiatives aligned in February 2019 to form CommonSpirit, was *already* a member of Premier as of 2020, at the same time legacy CHI facilities were members of HealthTrust Purchasing Group, L.P. The RFA's reference to "CommonSpirit" agreeing to "become a member" therefore is further inherently ambiguous and unclear as it necessarily includes Dignity who was already a member of Premier.[26]

CommonSpirit pointed out all of these defects to Defendants' counsel in written correspondence and during the parties' meet and confer calls,[27] but Defendants' counsel steadfastly refused to clarify, tailor, narrow, or modify the

---

[26] RFA No. 6 is also vague and ambiguous with regard to the term "agreed." Agreed with whom? Does "agreed" mean entered into a binding contract? Does it mean "agreed" internally at CommonSpirit? Does it mean "agreed" informally with Premier? Defendants' counsel refused to say, instead insisting with no analysis (as it does again in its portion of the Joint Statement) that the RFA is clear and proper as drafted.

[27] Defendants' counsel initially refused to participate in a meet and confer call with counsel for CommonSpirit. In a May 10, 2022 letter, counsel for CommonSpirit asked Defendants counsel to reconsider and participate in a meet and confer call to try to reach agreement on tailoring Defendants discovery requests to avoid court intervention. While Defendants' counsel ultimately agreed to participate in calls, they refused to tailor or revise their discovery requests in any way. CommonSpirit responded as fully as it could to Defendants' defective discovery requests, applying its reasonable and proportional interpretation as stated in CommonSpirit's counsel's May 10, 2022 letter. (Calkins Decl., Exh. A).

RFA in any way.[28]  CommonSpirit therefore responded as best it could to a defective RFA in a manner entirely compliant with Fed. Rule Civ. Proc. 36 and controlling case law.

CommonSpirit's Response to RFA No. 7:  Defendants' RFA No. 7 is similarly problematic.  It asks CommonSpirit to "Admit that CommonSpirit understood that, under the Participation Agreement, the pricing under the HealthTrust Vendor Contracts was confidential information." CommonSpirit's counsel pointed out in correspondence and during the two meet and confer calls that the RFA was vague and ambiguous, including as to the terms "understood," "the pricing" and "confidential information" but Defendants refused to clarify or revise the RFA instead insisting that it was clear and proper as drafted.  Clearly however it is not.

For example, Defendants refused to clarify the term "understood." Understood by whom?  CommonSpirit is an entity with thousands of employees.  And what is meant by "the pricing" specifically?  Defendants' counsel itself was unable to answer to this question during the parties' meet and confer calls.  And Defendants have previously referred to numerous categories of non-confidential information, including SKU numbers, part numbers, and product descriptions, as "pricing." (see e.g. Defendants' Counterclaims at ¶ 59, and Exhs. 4, 5, 6 to Defendants' Counterclaims).  It is

---

[28] CommonSpirit responded as it stated it would if Defendants refused to cooperate, which was to use its reasonable interpretation as stated in CommonSpirit's counsel's May 10, 2022 and May 20, 2022 letters.  (Calkins Decl., Exhs. A, B).

further unclear if Defendants are asking CommonSpirit to admit that this non-confidential information is confidential.

Additionally, despite the fact that "Confidential Information" is a defined term in the Participation Agreement, Defendants interestingly avoided using the defined term in their Requests, opting instead for the broadly general and undefined term "confidential information." Indeed, the fact that Defendants themselves determined that the term required a specific definition in the Participation Agreement only underscores Defendants' awareness that the term "confidential information" is subject to numerous interpretations. During not meet and confer calls Defendants refused to apply the defined term or clarify the meaning, choosing instead to seek CommonSpirit's admission regarding "confidential information" as an *undefined* term that is obviously subject to numerous interpretations.[29] [30] CommonSpirit responded to RFA No. 7 by admitting what it could as it understood the RFA and denying the remainder, a response that is specifically contemplated and proper pursuant to Fed. Rule Civ. Proc. 36.

CommonSpirit's Response to RFA No. 8: Defendants' RFA No. 8 suffered from similar deficiencies. It asked CommonSpirit to "Admit that CommonSpirit shared pricing information from HealthTrust Vendor Contracts

_____

[29] CommonSpirit's counsel pointed this out to Defendants' counsel during meet and confer calls but Defendants' counsel refused to tailor the RFA to remove the ambiguity.
[30] CommonSpirit's counsel Ms. Calkins confirmed this in her May 20, 2022 letter to Defendants' counsel.

with Premier." During meet and confer calls Defendants refused to explain what they meant by "pricing information." "Pricing information" can be interpreted in many different ways, and given that, as stated *supra*, Defendants have previously attempted to characterize commonly known information such as SKU numbers, part numbers, and product descriptions, as confidential "pricing information," CommonSpirit's objections including that the RFA is vague and ambiguous, followed by CommonSpirit's clear denial, is entirely proper.

Defendants also refused to explain during meet and confer calls as to what was meant by "shared." As used, it carries a negative inference and is therefore improper. CommonSpirit as an entity was the result of the February 2019 ministry alignment between Dignity Health, which was already a member of Premier, and CHI, which was a member of HealthTrust.

CommonSpirit's response is consistent with Rule 36 and proper.

## B. CommonSpirit's Responses to Defendants' Interrogatory Nos. 9 and 10 Are Proper

Responding to Defendants' Interrogatory No. 9, CommonSpirit provided a verified explanation of the relationship between CommonSpirit, Catholic Health Initiatives, and Dignity Health. Defendants do not complain that the explanation is in any way insufficient or unclear, Defendants instead complain that CommonSpirit's response includes a valid objection. Defendants further complain that CommonSpirit did not identify ill-described and unnecessary corporate documents on top of the admittedly sufficient explanation, without

any analysis or showing as to why such documents would be in any way necessary or relevant to any party's claims or defenses.

Responding to Interrogatory No. 10, CommonSpirit declined to adopt Defendants' inaccurate characterization of facts in its Response, as it is entitled to do, and in a manner entirely consistent with the parties' discussions. CommonSpirit then admitted facts to the extent possible in a manner entirely consistent with the Federal Rules. Once again, Defendants simply gloss over the deficiencies of the Interrogatory, instead complaining in essence that CommonSpirit did not adopt Defendants' mischaracterization of the facts.

### C. Defendants Seek the Confidential, Proprietary Information Of Their Direct Competitors, Premier and Vizient, But Fail to Explain Why The Sensitive, Proprietary Trade Secret Information Is Relevant to Defendants' Claims or Defenses.

To resist discovery under Rule 26(c)(7) a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. *Centurion Indus. v. Steurer*, 665 F.2d , 323, 325. If that is done the burden then shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. *Id.* The court must balance the need for trade secret information against the claim of injury resulting from disclosure. *Centurion Indus. v. Steurer,* 665 F.2d , 323, 325.

Here, there can be no legitimate dispute that certain of the documents sought by Defendants will include trade secret, proprietary information of

Defendants' **direct competitors, Premier and Vizient**, documents and information to which CommonSpirit is contractually bound to keep confidential. For third parties Premier and Vizient's trade secret and proprietary documents to fall into the hands of their direct competitor would result in harm, including giving Defendants visibility into Premier and Vizient's business strategies and negotiated deals. There is no way to "unring the bell" once such information has been provided. Indeed, it is more than a bit ironic that Defendants now complain that CommonSpirit declines to hand over third parties Premier and Vizient's proprietary, trade secret, and confidential information, including its confidential business strategy and the terms of its contracts with its members, to its direct competitor HealthTrust. Further, Defendants simply ignore that Dignity Health, which together with Catholic Health Initiatives, formed CommonSpirit in February 2019, was a member of Premier long before the ministry alignment and any facts at issue in this action. Defendants' ignore that their overbroad requests necessarily sweep those documents in as well, despite the fact that there can be no dispute that they have no relevance to this action.

Defendants' case law offers no support for their position. Defendants cite to *Clark v. Phoenix Homes, Inc.* 2010 U.S. Dist. LEXIS 163559, a case involving two youths who killed their foster parents. There were no third party trade secrets and proprietary business information being handed over to a direct competitor at issue, as Defendants are now demanding that

CommonSpirit do. Defendants also cite to *United States ex rel. Goodman,* 2020 U.S. Dist. LEXIS 262048, a case involving public access to court records and a defendant's request to unseal certain documents to allow defendant to develop its statute of limitations defense. As with *Clark v. Phoenix Homes*, *United States ex rel. Goodman* did not deal with a party's request to obtain extensive documentation providing the trade secret, proprietary information of its direct competitors.

Finally, Defendants have issued a third party subpoena to Premier directly and can presumably obtain the documents sought from Premier if Premier so chooses. (Calkins Decl., Exh. 3). If Premier is willing to provide documents containing its trade secret and proprietary information to Defendants then that should be up to Premier, not CommonSpirit who is contractually bound otherwise.

Defendants were unable to articulate any reason during meet and confer calls that any of the documents and information sought are relevant to their claims or defenses, or necessary in any way. Defendants' Joint Statement is similarly devoid of any substantive analysis as to why specifically Defendants need these documents and information. Defendants' blanket nonspecific complaint that CommonSpirit will not simply turn over documents containing the proprietary, trade secrets of HealthTrust's direct competitors Premier and Vizient, fails.

### D. CommonSpirit Has Produced Approximately 2000 Pages of Documents and Is Continuing to Produce Documents Consistent With Its Written Responses.

CommonSpirit continues its good faith production of documents and expects its production to be done or close to done by the time this Court engages in a call to discuss the present Joint Statement. On top of CommonSpirit's approximately 2000 pages of documents, CommonSpirit has also produced video materials and native spreadsheets with voluminous data. And, contrary to Defendants' assertion, CommonSpirit has confirmed that it will provide its privilege log as soon as possible, which CommonSpirit anticipates occurring in within the next week or two.

### III. COMMONSPIRIT'S CONCLUSION.

Defendants' Joint Statement is devoid of any analysis or support permitting the relief sought. Rule 36(a)(4) specifically provides that a responding party may "qualify and answer or deny only a part of a matter. Fed. R. Civ. Proc. 36 (a)(4). Yet Defendants complain without analysis that CommonSpirit asserted "objections of vagueness and ambiguity, and [responded] to the RFAs subject to those objections" both of which are specifically permitted under Rule 36 and case law.

Defendants then ask this Court to deem as admitted "the above-discussed" Requests for Admission based on what appears to be a sufficiency

argument, but such relief is not permissible in that instance. (*See Schmalz, Inc. v. Better Vacuum Cups, Inc.,* 2017 U.S. Dist. LEXIS 154260 at *4).[31]

Defendants also demand that the Court order CommonSpirit to turn over confidential information of third parties, despite the fact that CommonSpirit is contractually bound otherwise and Defendants currently have a subpoena out to third party Premier and will likely serve one on Vizient.

Defendants have failed to establish that they are entitled to the extreme relief requested, particularly in this proceeding, and Defendants' requests should be denied.

Respectfully submitted, this 22nd day of June, 2022, by:

> */s/ Elizabeth Boston Malloy*
> W. David Bridgers, TN BPR #016603
> Elizabeth Boston Malloy, TN BPR #038669
> Waller Lansden Dortch & Davis, LLP
> 511 Union Street, Suite 2700
> Nashville, TN 37219
> Telephone (615) 244-6380
> Facsimile (615) 244-6804
> David.Bridgers@wallerlaw.com
> Elizabeth.Malloy@wallerlaw.com
>
> Benjamin C. Block (*pro hac vice*)
> Paige Jennings (*pro hac vice*)
> Alexis Caligiuri (*pro hac vice*)
> Covington & Burling LLP
> One CityCenter
> 850 Tenth Street NW
> Washington, DC 20001-4956

---

[31] The court cited *Foretich v. Chung*, 151 F.R.D. 3 (D.D.C. 1993) as a leading case on the issue, concluding: The defendants are incorrect in their assumption that the right to challenge the "sufficiency" of a response is the equivalent of the right to challenge the veracity of a denial.

Tel: (202) 662-6000
bblock@cov.com
pjennings@cov.com
acaligiuri@cov.com

*Counsel for Defendants/Counterclaimants*


/s/ *Victor J. Domen, Jr. (with permission)*
Victor J. Domen, Jr.
NORTON ROSE FULBRIGHT US, LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: (202) 662-0200
vic.domen@nortonrosefulbright.com

James H. Turken
Rebecca Lawlor Calkins
Neil P. Thakor
Kelly L. Doyle
NORTON ROSE FULBRIGHT US, LLP
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
james.turken@nortonrosefulbright.com
rebecca.calkins@nortonrosefulbright.com
neil.thakor@nortonrosefulbright.com
kelly.doyle.dahan@nortonrosefulbright.com

*Counsel for Plaintiff/Counter-defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing has been served on June 22, 2022, via e-mail to Counsel of Record for CommonSpirit:

Victor J. Domen, Jr.
NORTON ROSE FULBRIGHT US, LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: (202) 662-0200
vic.domen@nortonrosefulbright.com

James H. Turken
Rebecca Lawlor Calkins
Neil P. Thakor
Kelly L. Doyle
NORTON ROSE FULBRIGHT US, LLP
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
james.turken@nortonrosefulbright.com
rebecca.calkins@nortonrosefulbright.com
neil.thakor@nortonrosefulbright.com
kelly.doyle.dahan@nortonrosefulbright.com

*Attorneys for CommonSpirit Health*

*/s/ Elizabeth Boston Malloy*