# Exhibit 4
# Exhibits
# To CommonSpirit's Position

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **COMMONSPIRIT HEALTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 3:21-cv-00460** |
| **HEALTHTRUST PURCHASING** | ) | **District Judge Trauger** |
| **GROUP, L.P., and** | ) | |
| **HPG ENTERPRISES, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**DECLARATION OF REBECCA LAWLOR CALKINS**</u>

I, Rebecca Lawlor Calkins, declare as follows:

I am an attorney admitted *pro hac vice* to practice before this Court, and am a partner at the law firm of Norton Rose Fulbright US LLP, counsel of record in this lawsuit for Plaintiff CommonSpirit Health ("Plaintiff"). I have personal knowledge of the facts stated herein, and could and would testify competently thereto if sworn as a witness.

1.      Attached hereto as <u>**Exhibit A**</u> is a true a correct copy of my meet and confer correspondence sent to Defendants' counsel dated May 10, 2022 in which I state: "

> [W]e are disappointed that Defendants have refused to have a meaningful meet and confer call to address the numerous problems inherent throughout Defendants' Interrogatories, Requests for Production, and Requests for Admission to CommonSpirit.  It was our hope to have a civil discussion with you regarding the rampant defects making most of Defendants' written discovery requests unanswerable in their current form, and reach agreement on tailoring Defendants' discovery requests to the issues in the case.

1

2.    Attached hereto as **<u>Exhibit B</u>** is a true a correct copy of my correspondence sent to Defendants' counsel dated May 20, 2022 in which I state with regard to remaining discovery requests:

"Despite the defects, we nonetheless … will produce documents based on our reasonable interpretation of the requests and subject to objections stated in the supplemental response…"

In the letter I further explain that CommonSpirit will provide other supplemental responses based on our reasonable understanding of the requests and reiterate that "we remain hopeful that we can resolve any discovery disputes informally and without court involvement."

3.    Attached hereto as **<u>Exhibit C</u>** is a true and correct copy of the of the outstanding document subpoena issued by Defendants to Premier Healthcare Solutions, Inc. with a production date of July 14, 2022.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 21st day of June, 2022, at Los Angeles, California.

_/s/ Rebecca Lawlor Calkins_
Rebecca Lawlor Calkins

# EXHIBIT A

May 10, 2022

**Via E-Mail**

Benjamin Block, Esq.
Paige Jennings, Esq.
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, D.C. 20001
*bblock@cov.com*
*pjennings@cov.com*


W. David Bridgers, Esq.
Elizabeth Boston Malloy, Esq.
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
*David.Bridgers@wallerlaw.com*
*Elizabeth.Malloy@wallerlaw.com*

Norton Rose Fulbright US LLP
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
United States of America

Rebecca Lawlor Calkins
Direct line +1 213 892 9357
rebecca.calkins@nortonrosefulbright.com

> **Re:** *CommonSpirit Health v. HealthTrust Purchasing Group, L.P., et al.*

Dear Counsel:

I write on behalf of Plaintiff CommonSpirit Health ("Plaintiff" or "CommonSpirit") to address the deficiencies in your clients, Defendants HealthTrust Purchasing Group, L.P. ("HealthTrust") and HPG Enterprises, LLC's ("HPG" collectively, "Defendants"), responses to Plaintiff's Interrogatories and Requests for Production ("Requests").

As discussed below, Defendants' responses fail to satisfy the requirements of the Federal Rules of Civil Procedure and are indisputably incomplete as they consist mainly of vague references to unidentified individuals, data and communications, as well as promises to provide additional documents at some unspecified date in the future as Defendants' "search for responsive documents within [their] possession, custody, or control continues."[1]

For example, CommonSpirit's Interrogatory No. 1, requested:

> [T]he complete factual basis for DEFENDANTS' assertion that COMMONSPIRIT misappropriated HPG's "highly confidential and trade secret pricing information for disclosure to [HPG's] competitor to COMMONSPIRIT'S advantage," including IDENTIFYING specifically all purportedly highly confidential and trade secret pricing information misappropriated, as alleged on page 2 of DEFENDANTS' COUNTERCLAIMS.

---

[1] HealthTrust Response to Interrogatory Nos. 2, 3, 5; HPG Response to Interrogatory No. 3).

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

Benjamin Block, Esq.
Paige Jennings, Esq.
W. David Bridgers, Esq.
Elizabeth Boston Malloy, Esq.
May 10, 2022
Page 2

Instead of providing facts going to the heart of Defendants' counterclaims as requested, HealthTrust instead responded with vague references to anonymous persons and rumors, without a single example of a purportedly misappropriated "confidential" price.

Specifically, the first paragraph of HealthTrust's response provides merely that on January 9, 2020, an unidentified person at HealthTrust "learned," in an unknown manner from an unidentified source, that an unidentified person at CommonSpirit "reached out" to an unidentified supplier asking the anonymous supplier to provide someone at CommonSpirit with unidentified pricing data and pricing agreements. Referencing "a supplier" without identifying the supplier, and pointing to "the pricing and contract information of HealthTrust contracts," without identifying the information, falls far short of providing actual facts as requested. The response then goes on to simply describe, inaccurately, a blank template that HealthTrust attached to its counterclaims, along with additional general descriptions of rumors, with virtually no facts.

If HealthTrust is referencing persons, suppliers, and pricing, HealthTrust must have this information and must provide it. There is no justification for its refusal to provide these critical facts in discovery.

Healthtrust's response to Interrogatory 2 is similarly deficient. It includes a laundry list of unidentified "representatives of" medical, pharmaceutical, and other companies that other unidentified "representatives of HealthTrust" had communications with.

HealthTrust failed to respond to Interrogatory 5 with anything other than objections and an assertion that it would respond to the Interrogatory by producing additional documents and a supplemental response at some unspecified point in the future.

HPG Enterprises' responses to CommonSpirit's Interrogatories are similarly lacking. HPG's response to Interrogatory 3, which asks it to identify all communications related to HPG's decision to stop making dividend payments to CommonSpirit consists of objections and the general statement that "there were numerous communications" which "principally were between Edward Jones and Daniel DeLay and between Robert Arreola and Ira Berkowitz." Vague references to "numerous communications" to an Interrogatory asking HPG to specifically identify those communications is akin to no response at all. As with other responses, HPG indicated it would respond to the Interrogatory by producing additional documents and a supplemental written response at some point, but failed to specify a date by which this would occur.

Defendants' responses also confirm that Defendants' document production is incomplete, as Defendants continue searching for responsive documents within their possession, custody and control. (HealthTrust Interrogatory Responses No. 2, 3, 5, HPG Interrogatory Response No. 3). Please advise as to when you intend to complete Defendants' document production.

Finally, we are disappointed that Defendants have refused to have a meaningful meet and confer call to address the numerous problems inherent throughout Defendants' Interrogatories, Requests for Production, and Requests for Admission to CommonSpirit. It was our hope to

Benjamin Block, Esq.
Paige Jennings, Esq.
W. David Bridgers, Esq.
Elizabeth Boston Malloy, Esq.
May 10, 2022
Page 3



have a civil discussion with you regarding the rampant defects making most of Defendants' written discovery requests unanswerable in their current form, and reach agreement on tailoring Defendants' discovery requests to the issues in the case.[2]  Please let us know by noon tomorrow, May 11, if you have reconsidered your position and will agree to have a meaningful call with us in this regard.  If you will not change your position, CommonSpirit will provide supplemental responses, responding as fully as it can to its reasonable and proportional interpretation of each of Defendants' Interrogatories, Requests for Production, and Requests for Admission.

It is always our hope to resolve any discovery disputes short of motion practice to avoid unnecessarily burdening the court.  As such, please let us know your availability on Wednesday or Thursday of this week (May 11 or May 12) to discuss the deficiencies in Defendants' written discovery responses and set a date by which Defendants will supplement their responses to include the facts requested, as well as complete their document production.  As CommonSpirit will agree to provide supplemental responses as set forth above, we would propose selecting one date for all parties to provide supplemental responses and complete their document productions.

We look forward to hearing from you.  Thank you in advance for your anticipated professional cooperation.

Sincerely,

Rebecca Lawlor Calkins

RLC/smc

cc:    James H. Turken, Esq.
       Victor J. Domen, Jr., Esq.
       Kelly D. Dahan, Esq.

---

[2] We strongly disagree with Defendants' characterizations of Defendants' discovery requests to CommonSpirit as "targeted" as they are anything but.  To the contrary, they are haphazard and grossly overbroad, and would necessarily require the production of tens of thousands of documents irrelevant to the present case, including many documents containing confidential and trade secret information of third parties and competitors to HealthTrust.

# EXHIBIT B

May 20, 2022

Norton Rose Fulbright US LLP
555 South Flower Street
Forty-First Floor
Los Angeles, California  90071
United States of America

Rebecca Lawlor Calkins
Direct line +1 213 892 9357
rebecca.calkins@nortonrosefulbright.com

**Via E-Mail**

W. David Bridgers
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
*David.Bridgers@wallerlaw.com*

      **Re:**    *CommonSpirit Health v. HealthTrust Purchasing Group, L.P., et al.*

Dear Counsel:

Thank you for our continued meet and confer discussion earlier this week.  As you will recall, we pointed out the numerous and significant defects present in defendants' written discovery, however in our continued effort to resolve discovery disputes informally and without burdening the court, we agreed to supplement certain responses and further consider others.[1]  Below we address those which we agreed to further consider.

With regard to Request for Production No. 7, we will supplement the response and produce documents pursuant to our reasonable interpretation and subject to objections which will be stated in the supplemental response.[2]

With regard to Request for Production No. 9, we will supplement the response and produce documents pursuant to our reasonable interpretation and subject to objections which will be stated in the supplemental response.

With regard to Request for Production Nos. 19 and 20, we pointed out the numerous defects, including that they were grossly overbroad and potentially sought tens of thousands of documents containing confidential and proprietary information relating to third parties and facilities having nothing to do with any issue in the case.  Despite the defects, we nonetheless agreed to further consider these requests and will produce documents based on our reasonable interpretation of the requests and subject to objections stated in the supplemental response, including limiting the scope of the requests to include only legacy CHI facilities (you conceded during our call that such a limitation was indeed appropriate).  With regard to Request No. 21, we note that you were unable to explain the relevance of the confidential and proprietary documents sought, so while we will further consider this request, our current position is that the request remains objectionable and improper.[3]

---

[1] We note that Mr. Bridgers' letter of yesterday's date contains numerous inaccuracies which we will address in a separate communication.  This letter addresses only the requests which we agreed to further consider.

[3] We also do not believe there was a satisfactory explanation provided of the relevance of the documents sought in defendants' Requests No. 19 and 20.

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

NORTON ROSE FULBRIGHT

With regard to Interrogatory No. 9, we will provide a supplemental response explaining the relationship between CommonSpirit, Catholic Health Initiatives, and Dignity Health.

With regard to Request for Admission Nos. 7 and 9, we pointed out that the requests were defective and objectionable, however we will admit or deny based on our reasonable understanding of the requests.

We remain hopeful that we can resolve any discovery disputes informally and without court involvement.  Please let us know if you would like to further discuss any of the above.


Sincerely,

Rebecca Lawlor Calkins

RLC/smc

cc:      All counsel

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| COMMONSPIRIT HEALTH, | ) | |
| | ) | |
| Plaintiff/Counter-defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:21-cv-00460 |
| HEALTHTRUST PURCHASING | ) | |
| GROUP, L.P., and | ) | |
| HPG ENTERPRISES, LLC, | ) | |
| | ) | |
| Defendants/Counterclaimants. | ) | |

---

## NOTICE OF SUBPOENA TO THIRD PARTY
## PREMIER HEALTHCARE SOLUTIONS, INC.

---

In accordance with Federal Rule of Civil Procedure 45 and Local Rule 45.01, Defendants/Counterclaimants HealthTrust Purchasing Group, L.P. ("HealthTrust") and HPG Enterprises, LLC ("HPG") hereby provide Plaintiff/Counter-defendant CommonSpirit Health ("CommonSpirit") with notice of their subpoena to Premier Healthcare Solutions, Inc. ("Premier"), which HealthTrust and HPG shall issue to Premier two (2) business days after the delivery of this notice to CommonSpirit.

A true and correct copy of the subpoena to Premier is attached hereto as **Exhibit 1**.

_/s/ Elizabeth Boston Malloy_

W. David Bridgers, TN BPR #016603
Elizabeth Boston Malloy, TN BPR #038669
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone (615) 244-6380
Facsimile (615) 244-6804
David.Bridgers@wallerlaw.com
Elizabeth.Malloy@wallerlaw.com

Benjamin C. Block (_pro hac vice_)
Paige Jennings (_pro hac vice_)
Alexis Caligiuri (_pro hac vice_)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
Tel: (202) 662-6000
bblock@cov.com
pjennings@cov.com
acaligiuri@cov.com

_Counsel for Defendants-Counterclaimants_

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on June 9, 2022, via e-mail to Counsel of Record for CommonSpirit:

Victor J. Domen, Jr.
NORTON ROSE FULBRIGHT US, LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: (202) 662-0200
vic.domen@nortonrosefulbright.com

James H. Turken
Rebecca Lawlor Calkins
Neil P. Thakor
Kelly L. Doyle
NORTON ROSE FULBRIGHT US, LLP
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
james.turken@nortonrosefulbright.com
rebecca.calkins@nortonrosefulbright.com
neil.thakor@nortonrosefulbright.com
kelly.doyle.dahan@nortonrosefulbright.com

*Attorneys for CommonSpirit*

*/s/ Elizabeth Boston Malloy*

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## for the
### Middle District of Tennessee

| | |
|---|---|
| CommonSpirit Health | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   3:21-cv-00460 |
| HealthTrust Purchasing Group, L.P. and HPG Enterprises, LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                         Premier Healthcare Solutions, Inc.
           Registered Agent: CT Corporation System, 160 Mine Lake Ct, Suite 200, Raleigh, North Carolina 27615

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A, attached.

| Place:  Hall Booth Smith, P.C. (Attn. Erin Young, Esq.)<br>       11215 North Community House Road, Suite 750<br>       Charlotte, North Carolina 28277 | Date and Time:<br><br>07/14/2022 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    06/14/2022

            *CLERK OF COURT*
                                    OR

_____      *Elizabeth Boston Malloy*
   *Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   HealthTrust Purchasing Group, L.P. and HPG Enterprises, LLC            , who issues or requests this subpoena, are:

W. David Bridgers and Elizabeth Boston Malloy, Waller Lansden Dortch & Davis LLP, 511 Union Street, Nashville, Tennessee 37215, david.bridgers@wallerlaw.com and elizabeth.malloy@wallerlaw.com, (615) 244-6380

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT A

## EXHIBIT A

HealthTrust Purchasing Group, L.P. and HPG Enterprises, LLC (collectively "HealthTrust"), through counsel, hereby serve the following Requests for Production pursuant to Federal Rule of Civil Procedure 45.

## INSTRUCTIONS

1. For the purpose of reading, interpreting, or construing the scope of these requests, the terms used should be given their most expansive and inclusive interpretation.

2. All singular terms include the plural, and all plural terms include the singular.

3. You must answer each request separately and fully, unless it is objected to, in which event the reason for objection should be specifically and separately stated. If you assert that part of a request is objectionable, you must respond fully to the remaining parts of the request to which you do not object.

4. If all or any part of any request is objected to on the ground that it seeks privileged information, or all or any part of any response thereto is withheld under any claim of privilege, for each such objection or claim identify the nature of the privilege (including work product) that is being claimed, and provide the following information as to each communication that the privilege is alleged to cover: (i) the name(s) of the person(s) making the communication and the name(s) of each person present while the communication was made (or the recipient(s) of the communication) and, where not apparent, the relationship of the person(s) present to the person(s)

1

making the communication; (ii) the date and place of the communication; (iii) the type of communication (*e.g.*, letter, conversation, voice mail message, electronic mail, etc.); and (iv) the general subject matter of the communication.

5. Production of information, documents, and communications shall be made in compliance with the attached Protective Order entered by the Honorable Judge Aleta A. Trauger on September 13, 2021 in Case No. 3:21-cv-00460, pending in the United States District Court for the Middle District of Tennessee. (*See* **Exhibit A-1**).

6. Production of information, documents, and communications shall be made in compliance with the attached Proposed Stipulated Order Regarding the Protocol for Producing Documents and Electronically Stored Information. (*See* **Exhibit A-2**).

7. Unless otherwise stated, the responsive period for each request is from January 1, 2019 to June 10, 2021.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. All documents relating to the transition and/or preparations for Premier to be the GPO for Catholic Health Initiatives' ("CHI") legacy facilities.

2. Any communications with any vendor or supplier regarding or reflecting the pricing that such vendor or supplier made available to CHI's facilities under its contract with HealthTrust.

2

3.     Any communications with CommonSpirit Health ("CommonSpirit") and/or CHI that discuss, reference, or mention the potential "go-live" date for CommonSpirit's membership or participation in Premier's GPO.

4.     Any communications that discuss, reference, or mention the date on which CHI's legacy facilities might or would begin making purchases through Premier's GPO.

5.     All copies, drafts, and/or versions of the "price template" sent by Ken Tompkins on February 28, 2020 and any similar communications with Vendors.

6.     All documents relating to any supplier engagement meeting(s) regarding CommonSpirit and/or Premier (including but not limited to the meetings that took place in Denver, Colorado on February 27 and 28, 2020), including, but not limited to, the planning of, execution of, and aftermath of such meeting(s).

7.     Any communications with Marvin O'Quinn relating to CHI's legacy facilities' potential or actual participation with the Premier GPO.

# EXHIBIT A-1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CommonSpirit Health, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:21-cv-00460 |
| | ) | District Judge Trauger |
| HealthTrust Purchasing Group, L.P., and | ) | |
| HPG Enterprises, LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

## AGREED PROTECTIVE ORDER

---

By stipulation and agreement of the Parties, it is **ORDERED** that, pursuant to Federal Rule of Civil Procedure 26(c), the following terms and conditions shall govern the treatment of confidential, proprietary, financial, and/or trade secret information, documents, or other materials to be produced and/or disclosed during the pendency of the above-captioned lawsuit (the "Action").

The Parties have conferred in good faith and have agreed to this Agreed Protective Order (the "Protective Order" or "Order") for the purposes of protecting such information, documents, or materials, the facilitation of the production of such information, documents, or materials, and the minimization of this Court's involvement in adjudicating disputes among the Parties arising from the production of such information, documents, or materials.

This Order does not confer blanket protections on all disclosures or responses to discovery, and the protection it gives from public disclosure and use extends only to the specific materials designated as confidential or otherwise entitled to confidential treatment under the applicable legal

Case 3:21-cv-00460 Document 74 Filed 06/23/22 Page 22 of 56 PageID #: 434

principles. This Order does not automatically authorize the filing under seal of materials designated under this Order. Instead, the Parties must comply with Section 5.07 of Administrative Order 167-1, Local Rule 5.03, and this Order if they seek to file anything under seal.

This Order does not govern the use of materials designated under this Order at the trial in this Action, which shall be governed by separate Order of the Court. Counsel for the Parties shall cooperate in proposing an Order seeking to protect designated materials from broad disclosure at trial, subject to the Court's preference, input, and approval.

Good cause appearing, and pursuant to the agreement of the Parties, it is hereby **ORDERED** that the following provisions shall apply to and govern the handling of information, documents, and other materials produced or disclosed in the course of this Action:

1.      This Protective Order governs documents, information, or other materials produced in the course of this Action, whether produced (a) in response to formal or informal discovery requests, (b) in compliance with the Federal Rules of Civil Procedure, or (c) voluntarily in support of any claim or defense in this action, including such information contained in documents, interrogatory responses, testimony (whether trial, deposition, or written declaration or affidavit), responses to requests for admission, initial disclosures, expert reports, or other expert-related materials.

2.      When used in this Order, the phrase "disclosing party" refers to the Parties or non-parties to this Action who produce discovery materials in the Action. The phrase "receiving party" refers to the Parties or non-parties to this Action who receive discovery materials in the Action. The phrase "designating party" refers to the Parties or non-parties to this Action who designate as confidential any discovery materials in the Action.

3.      Any of the Parties may designate materials or information disclosed or produced in this action as "Confidential" or as "Attorney's Eyes Only."

4.      If a party designates materials or information as "**Confidential**," that party is representing to the Court and to opposing counsel, in good faith, that it considers the materials or information so designated to be confidential or trade secret information in which it has a valuable proprietary interest, and that disclosure to persons not authorized to view it would cause competitive or other recognized harm. If a party designates confidential materials or information as "**Attorney's Eyes Only**," that party is representing to the Court and to opposing counsel, in good faith, that the materials or information so designated is of such current relevance to the party's business operations that designation as "Confidential" hereunder would be insufficient to protect the proprietary interest of the disclosing party.

   a.   Over-designation is prohibited. To the extent practicable, only those parts of documents, items, or oral or written communications that require protection shall be designated. Mass, indiscriminate, or routinized designations are prohibited. If a designating party learns that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protective initially asserted, the designating party must promptly notify all Parties that it is withdrawing the mistaken designation.

5.      Any of the Parties producing "Confidential" or "Attorney's Eyes Only" materials or information may designate such materials or information by the following:

   a.   As to documents, responses to discovery requests, and tangible things, the disclosing party may affix by writing, stamping, or labeling each page and item containing or disclosing the "Confidential" or "Attorney's Eyes Only" information

with the term "CONFIDENTIAL" or "ATTORNEY'S EYES ONLY" as appropriate.

    b.   As to information disclosed at a deposition, the disclosing party may designate such information as "Confidential" or as "Attorney's Eyes Only," as appropriate, by so indicating on the record at the deposition the testimony to which the designation applies; or by notifying the court reporter and all Parties to the Action, within thirty (30) calendar days of receipt of the deposition transcript, of the portions of the testimony that should be designated as "Confidential" or as "Attorney's Eyes Only." At the disclosing party's option, portions of a deposition transcript that have been designated as "Confidential" or as "Attorney's Eyes Only" may be bound separately from the rest of the transcript and marked as such. A disclosing party has the right, at the deposition, to have deposition testimony containing "Confidential" or "Attorney's Eyes Only" information heard only by those permitted under this Protective Order to have access to such information.

6.    Materials or information produced or disclosed during this Action shall be used by the Parties and their counsel only in connection with the prosecution of, defense of, appeal of, attempted settlement of, or attempt to enforce the judgment of the Action. Except as required by law, materials or information produced or disclosed during this Action may not be used for any other purpose, including, without limitation, any business, commercial, or competitive purpose, any purpose related to any other investigation or proceeding or evaluation of other potential claims unrelated to the causes of actions and transactions at issue in the action. Materials or information shall not be copied, reproduced, summarized, extracted or abstracted, except to the extent that such copying, reproduction, summarization, extraction or abstraction is reasonably necessary for the

conduct of the Action. All such copies, reproductions, summaries, extractions, and abstractions shall be subject to the terms of this Order and labeled in the same manner as the designated materials on which they are based.

7.     Materials or information designated as "Confidential" or as "Attorney's Eyes Only," including summaries, abstracts, copies, indices, and exhibits, will be used solely for purposes of this Action and will not be disclosed to anyone other than the persons permitted under this Protective Order.

8.     Materials or information designated as "Attorney's Eyes Only," including summaries, abstracts, copies, indices, and exhibits, will not be made available to and will not be disclosed to anyone other than the following persons:

    a. Counsel of record working on this action on behalf of any party to this Action, together with the assistants, secretaries, paralegals, or other clerical personnel who are actively assisting such counsel in the preparation of this Action;

    b. Court stenographers, court reporters, videographers, outside deposition video services, and their staff, and independent contractors or third Parties engaged to record, transfer, or store video depositions, provided that such persons are furnished with a copy of this Protective Order and execute a Declaration of Compliance in the form and substance as that attached as Exhibit A;

    c. Outside Vendors retained by or for the Parties to assist in one or more aspects of copying, organizing, coding, converting, storing, or retrieving data or designing programs for handling data connected with the Action, preparing for pretrial discovery, or preparing for trial and/or hearings in the Action, including but not limited to e-discovery vendors, litigation support personnel, jury consultants, and

graphics consultants, as well as such vendors' staff and clerical employees whose duties and responsibilities require access to such confidential discovery materials, provided that such persons are furnished with a copy of this Protective Order and execute a Declaration of Compliance in the form and substance as that attached as Exhibit A;

d. Mock jurors and jury or trial consults retained or engaged by such counsel of record in connection with their preparation of this Action, and only to the extent necessary for such persons to carry out their duties in connection with this Action, provided that such persons are furnished with a copy of this Protective Order and execute a Declaration of Compliance in the form and substance as that attached as Exhibit A;

e. Mediators who attempt to mediate this Action (if any), together with their staff, provided the mediator is furnished with a copy of this Protective Order and executes Declaration of Compliance in the form and substance as that attached as Exhibit A;

f. The authors, addressees and recipients of, and any person specifically referred to in, a document, record, communication, or electronically stored information;

g. The Court and any person employed by the Court whose duties require access to "Attorney's Eyes Only" information or materials; and

h. Outside experts and consultants retained, consulted, or specifically employed by any counsel or party to this Action in connection with the preparation, trial, or appeal of this Action, together with the employees and assistants thereof ("Retained Experts"), provided the provisions of Section 10 below are complied with.

9.     Materials or information designated as "Confidential," including summaries, abstracts, copies, indices and exhibits, will not be made available and will not be disclosed to anyone other than the following persons:

    a.  The persons described in Section 8 above, under the same conditions, if any; and

    b.  The Parties, including officers, directors, and employees as representatives of the Parties, to this Action.

10.     Retained Expert Witnesses may not have access to "Confidential" or "Attorney's Eyes Only" materials or information unless such persons are first furnished with a copy of this Protective Order and execute a Declaration of Compliance in the form and substance as that attached hereto as Exhibit A.

11.     The execution of a Declaration of Compliance, if required by this Protective Order, is the responsibility of the Parties, and counsel shall retain the original executed Declaration of Compliance. A Declaration of Compliance will be made available to the Court and other Parties to this Action upon request or Court Order.

12.     The restrictions and obligations of this Protective Order do not apply to any information that (a) is public knowledge, (b) becomes public knowledge through no fault of any party to this Protective Order other than the disclosing party, or (c) comes into the possession of receiving Parties through means other than the disclosure of such information in this Action.

13.     Materials designated as "Confidential" or as "Attorney's Eyes Only" may be shown to deponents and otherwise used in depositions and at a trial or hearing in this Action, so long as such use complies with the restrictions of this Protective Order, or otherwise complies with an order of the Court. If the receiving party wishes to show a document designated as "Confidential" or as "Attorney's Eyes Only" to a deponent who is not otherwise permitted by this Agreed

Protective Order to view such document, the disclosing party must waive the restrictions placed on the use of the document by this Protective Order for the limited purpose of allowing the particular deponent to view the particular document for only so long as necessary, and the disclosing party may condition such waiver on the execution by the deponent of a Declaration of Compliance in the form and substance as that attached as **Exhibit A**. The receiving party shall not unreasonably object to such disclosure.

14.     Information produced in this Action that has been designated as "Confidential" or as "Attorney's Eyes Only," and the information derived therefrom, including excerpts, summaries, extracts, compilations, and the like, will be kept confidential by those who receive it, and it will be maintained at a location and in a manner that ensures that access to the information is limited to those persons entitled to have such access under this Protective Order. Notwithstanding the foregoing, the disclosing party is free to do whatever it desires with its own information; provided, however, that if the disclosing party makes the document publicly available without restriction, the disclosing party will promptly notify the receiving party, and the "Confidential" or "Attorney's Eyes Only" restriction will be removed therefrom.

15.     If a disclosing party, through inadvertence, provides any materials or information that should have been designated as "Confidential" or "Attorney's Eyes Only," but fails to designate them as such at the time of production, the disclosing party may designate such materials or information as "Confidential" or "Attorney's Eyes Only" by providing (a) written notice to all Parties that received the materials or information of the inadvertent production, and (b) substitute copies of the materials marked, as appropriate, "CONFIDENTIAL" or "ATTORNEY'S EYES ONLY"; or, in the case of deposition testimony, by causing the court reporter to re-issue transcripts designated in accordance with Section 5(b) above.

a. If a party desires to file materials designated as "Confidential" or "Attorney's Eyes Only" with a court or to disclose in a court filing information designated as "Confidential" or "Attorney's Eyes Only," the party shall take all steps required by that particular Court to file the materials or filing under seal. The fact that a document has been designated under this Order is insufficient to justify filing under seal. The Parties acknowledge that the decision to seal a document or filing is a matter for the Court's discretion, pursuant to Fed. R. Civ. P. 26(c), and under the principles set forth in *Procter & Gamble Co. v. Banker's Trust Co.*, 78 F.3d 219 (6th Cir. 1996), *Brown & Williamson v. FTC*, 710 F.2d 1165 (6th Cir. 1983), and other applicable law. It shall not be a violation of this Protective Order if the Court refuses to seal a document or filing or later unseals a document or filing subject to this Protective Order.

b. The proponent of sealing must provide compelling reasons to seal the documents and demonstrate that the sealing is narrowly tailored to those reasons. *Beauchamp v. Fed. Home Loan Mortg. Corp.*, 658 F. App'x 202, 207 (6th Cir. 2016) (quoting *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016)). The proponent must analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations. *Id.* If a disclosing party files its own materials designated under this Order and the Court unseals the document, that disclosing party may request that the document be withdrawn rather than filed not-under-seal, in order to avoid the public disclosure thereof.

16. This Protective Order will remain in full force and effect and will continue to be binding on all Parties to this Order and affected persons after the conclusion of this Action. Within

sixty (60) days of the final conclusion of this Action (including any appeals), all Parties who received materials designated as "Confidential" or "Attorney's Eyes Only" shall return such materials to the disclosing party or destroy such materials and certify in writing to all other Parties that they have complied with this Section.

17.     Should a party to this Protective Order be commanded or compelled to produce materials or information designated hereunder as "Confidential" or "Attorney's Eyes Only," as by subpoena, civil investigative demand, discovery request in a separate action, or by similar compulsory process that subjects the recipient to sanctions unless complied with, the party must:

    a.    Provide the disclosing party with written or electronic notice and a copy of the compulsory process; and

    b.    Forbear, to the extent reasonably feasible, producing such materials or information for at least five (5) business days after the disclosing party's receipt of such written notice, interposing, if necessary, any reasonable objections, and providing, if necessary or prudent, a copy of this Protective Order to the person seeking to command or to compel the materials or information so that the disclosing party may have an opportunity to intervene to protect its interests.

18.     If any party to this Action believes that materials or information that has been designated "Confidential" or "Attorney's Eyes Only" should not have been so designated, that party may move to alter or to remove the objectionable designation; provided, however, that counsel has first made a good-faith effort to resolve its objection with counsel for the disclosing party that designated the materials or information as "Confidential" or "Attorney's Eyes Only." No party shall be obligated to challenge the proprietary of a "Confidential" or "Attorney's Eyes Only" designation at the time it is made, and a failure to do so shall not preclude a subsequent

4852-9019-3910.2

challenge. In connection with any motion challenging the "Confidential" or "Attorney's Eyes Only" designation of materials or information, the disclosing party will have the burden of proof to support the "Confidential" or "Attorney's Eyes Only" nature of the materials or information.

    a. The Parties shall follow the following approach with respect to the challenging of designations: The objecting party shall identify each particular document, page, or other materials bearing a designation to which it objects and shall specify the reason(s) for the objection. The Parties will have ten (10) calendar days to negotiate an informal resolution of the dispute. If no agreement is reached within that five-day period, the objecting party may request relief from the Court within ten (10) calendar days thereafter. The designating party bears the burden of persuasion with respect to the propriety of the designation. Information designated "Confidential" or "Attorney's Eyes Only" shall be treated as such by a receiving/objecting party unless and until otherwise agreed to by the Parties or otherwise ordered by the Court.

19.     Neither the provisions of this Protective Order nor the filing of any materials under seal will prevent the use of materials or information subject to this Protective Order in open court, whether at trial or at a hearing. If a disclosing party desires to restrict access to the information or materials in question when used in open court, that party must separately move the Court for an appropriate order.

20.     A receiving party may file with this Court any materials or information designated as "Confidential" or "Attorney's Eyes Only" only if it reasonably believes it is necessary to do so for purposes of pleadings, motions, or other matters related to the prosecution or defense of the Action.

a. Prior to the filing of any materials or information designated as "Confidential" or "Attorney's Eyes Only" in this Court, the filing party must file a motion seeking to have such materials or information be placed under seal. The filing party has met its duty if it has so moved in good faith, even if the motion is denied.

b. Documents filed pursuant to this paragraph and its rules shall be clearly marked: "CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER DATED [date of this Order]".

c. The Parties must redact social security numbers, financial account numbers, and driver's license numbers from all documents filed with the Court in this Action.

21.     Nothing in this Protective Order prevents or otherwise restricts any counsel from rendering advice to that counsel's client who is presently a party to this Action, or from examining any witness, and in the course thereof, relying upon an examination of materials or information subject to this Protective Order; provided, however, that in rendering such advice or examining the witness, the counsel shall not disclose the substance of such materials or information to those not authorized hereunder to receive such materials or information.

22.     Nothing in this Protective Order shall prevent a party from seeking additional protection of its materials or information, or from seeking a modification of this Protective Order. This Protective Order is without prejudice to the rights of any party or non-party to seek such additional or other relief relating to discovery as may be appropriate.

23.     The production of materials or information by disclosing Parties shall, to the maximum extent permitted by law, be governed by Tennessee law regarding the inadvertent production of materials protected by the attorney-client privilege, the attorney work product doctrine, or other privilege or immunity from discovery recognized under applicable law. If a

disclosing party inadvertently discloses materials or information protected by the attorney-client privilege, the attorney work product doctrine, or other privilege or immunity from discovery, the disclosing party may so advise, in writing, all Parties that received the materials or information and request that the materials or information be returned and that the materials or information produced should be treated as such in accordance with that designation under this Agreement. If such a request is made, no party receiving the same will thereafter assert that the inadvertent disclosure waived any privilege or immunity from discovery.

      a.    Any party receiving such request shall return or destroy, within five (5) business days of receipt of such request, the materials and information so identified or otherwise bring the issue to this Court's attention for a determination as to whether the privilege or protection applies. If a party discloses materials or information in connection with this Action that the disclosing party claims to be protected by the attorney-client privilege, the attorney work product doctrine, or other privilege or immunity from discovery, the disclosure of that materials or information will not constitute or be deemed a waiver or forfeiture—in this Action or any other action— of any claim of privilege or protection that the disclosing party would otherwise be entitled to assert with respect to the materials or information and its subject matter.

24.    If the disclosing party reasonably believes that a requested document contained in a "Confidential" or "Attorney's Eyes Only" document contains privileged information, the disclosing party may redact the contents of the document and provide a privilege log to the receiving party.

25.    Nothing contained in this Order or any designation hereunder, or any failure to make such designation, shall be used or characterized by any party as an admission by a party or

a party opponent. Nothing in this Order shall be deemed an admission that any particular information designated as "Confidential" or "Attorney's Eyes Only" is entitled to protection under the Order, Fed. R. Civ. P. 26(c), or any other law, or that such information constitutes a trade secret under the law. Nothing in this Order shall be construed as granting any person or entity a right to receive specific "Confidential" or "Attorney's Eyes Only" information where a court has entered an order precluding that person or entity from obtaining access to that information. The Parties specifically reserve the right to challenge the designation of any particular information as "Confidential" or "Attorney's Eyes Only," and agree that no party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Nothing contained in this Order and no action taken pursuant to it shall prejudice the right of any party to contest the alleged relevancy, admissibility, or discoverability of any designated documents. Furthermore, the Parties specifically reserve the right to apply to the Court for a further protective order or *in camera* inspection relating to any protected information or discovery materials, and the right to seek a modification of this Order.

26. Except for an inadvertent disclosure or other violation of this Order, any knowing disclosure or use of the information protected from unauthorized disclosure under this Order shall constitute contempt of court and any party knowingly violating this Order shall be liable to the designating party for such violation. The designating party shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such violation and any relief obtained by the designating party shall be in addition to all other remedies otherwise available to the designating party.

27. This Order shall serve as a stipulation and agreement between the Parties, and shall be effective immediately upon signature by counsel for all Parties.

It is **SO ORDERED**.

_____
THE HONORABLE ALETA A. TRAUGER
DISTRICT COURT JUDGE

**SUBMITTED AND APPROVED FOR ENTRY BY:**

*/s/ Elizabeth Boston Malloy*
W. David Bridgers, TN BPR #016603
Elizabeth Boston Malloy, TN BPR #038669
WALLER LANSDEN DORTCH & DAVIS,
LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone (615) 244-6380
Facsimile (615) 244-6804
David.Bridgers@wallerlaw.com
Elizabeth.Malloy@wallerlaw.com

Benjamin C. Block (*pro hac vice*)
Paige M. Jennings (*pro hac vice*)
Alexis Caligiuri (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, D.C. 20001
Telephone: (202) 662-5855
bblock@cov.com
pjennings@cov.com
acaligiuri@cov.com

*Attorneys for Defendants HealthTrust and HPG*

*/s/ Victor J. Domen, Jr. (with permission)*
Victor J. Domen, Jr.
NORTON ROSE FULBRIGHT US, LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: (202) 662-0200
vic.domen@nortonrosefulbright.com

James H. Turken
Rebecca Lawlor Calkins
Neil P. Thakor
Kelly L. Doyle
NORTON ROSE FULBRIGHT US, LLP
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
james.turken@nortonrosefulbright.com
rebecca.calkins@nortonrosefulbright.com
neil.thakor@nortonrosefulbright.com
kelly.doyle.dahan@nortonrosefulbright.com

*Attorneys for Plaintiff CommonSpirit Health*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CommonSpirit Health, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:21-cv-00460 |
| | ) | District Judge Trauger |
| HealthTrust Purchasing Group, L.P., and | ) | |
| HPG Enterprises, LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

## DECLARATION OF COMPLIANCE

---

I, _____, under penalty of perjury, state that the following is true and correct:

1. I am over 18 years of age.

2. I have read the Agreed Protective Order entered in the above-referenced action before reviewing or receiving access to the content of any documents, information, or other materials subject to the provisions of the Agreed Protective Order.

3. I understand and agree that I am personally bound by and subject to the restrictions and obligations of the Agreed Protective Order.

4. I understand that the unauthorized disclosure of a document, information, or other materials protected by the Agreed Protective Order may constitute breach of this Declaration and may subject me both to the contempt powers of the above-referenced Court, and to liability to one or more of the Parties.

5.      I subject myself to the jurisdiction and venue of said Court for purposes of enforcing this Declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the _____ day of _____, _____.


_____
Signature


_____
Name

Case 3:21-cv-00460 Document 74-4 Filed 09/12/22 Page 39 of 56 PageID #: 1361

# EXHIBIT A-2

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| COMMONSPIRIT HEALTH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:21-cv-00460 |
| | ) | Judge Trauger |
| vs. | ) | |
| | ) | **[PROPOSED] STIPULATED ORDER** |
| HEALTHTRUST PURCHASING GROUP, | ) | **REGARDING THE PROTOCOL FOR** |
| L.P., ET AL., | ) | **PRODUCING DOCUMENTS AND** |
| | ) | **ELECTRONICALLY STORED** |
| Defendant. | ) | **INFORMATION** |
| | ) | |

To expedite the flow of discovery material and to facilitate the consistency in the format of the documents to be produced by the Parties in this case, Plaintiff and Defendants (collectively "Parties"), by and thought their respective counsel, and pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, hereby stipulate and agree to the terms of this Stipulated Order Regarding the Protocol for Producing Documents and Electronically Stored Information:

IT IS HEREBY STIPULATED, subject to the approval of the Court that:

1. This Stipulated Protocol for Producing Documents and Electronically Stored Information (The "ESI Protocol") shall govern the production of documents and electronically stored information ("ESI") by the Parties in the above captioned litigation ("this Action").

2. The ESI Protocol shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the issuing party and the third party. Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action.

3. To the extent a technical term is not defined herein, those technical terms shall be defined by the "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

4. The production specifications in this Order apply to paper records and ESI that are produced in the first instance in this Action. The terms and specifications of this Order shall only apply to productions made after the date of entry of this Order. Productions in this Action that were

delivered before the date of entry of this Order are exempt from the terms of the Order, unless the Producing Party and Receiving Party otherwise agree.

5. To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

6. Should any party subsequently determine in good faith that it cannot proceed as required by this order or that the order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

**A. Cooperation**: The Parties acknowledge their duty to meet and confer in good faith to try to resolve discovery disputes.

**B. Definitions**:

1. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.

2. "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

3. "Hard-Copy Document" means Documents existing in paper form at the time of collection.

4. "Native Format" means and refers to an electronic document's associated file structure defined by the original creating application. For example, the native format of an Excel workbook is a .xls or .xslx file.

5. "Metadata" refers to application and system information of a file that contains data about the file, as opposed to describing the content of a file, as the term is described and used in "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

6. "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

7. "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied

to the characteristics of the data set.

8. "Confidentiality Designation" means the legend affixed to "Confidential" or "Highly Confidential" Discovery Material as defined by, and subject to, the terms of the Stipulated Protective Order.

9. "Searchable Text" means the native text extracted from ESI and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

## C. Disclosures of Custodial and Non-Custodial Sources

Any party served with discovery shall disclose its custodial and non-custodial sources of potentially relevant data within fourteen (14) days of the ESI Rule 26(f) Meet-and-Confer. The custodian information disclosure shall include job title or position. The non-custodial source information disclosure shall include system name[1] and, if the name differs from the relevant software, an identification of the name and version number of the relevant software. The parties may meet and confer to discuss the custodial or non-custodial sources and to try to agree on a reasonable scope of discovery.

## D. Search Terms

### 1. Search Term Disclosure

The Producing Party shall provide the receiving party with a list of search terms used to cull specific data sets in advance of a review for responsiveness, as well as any other culling measures that are not otherwise covered by this Protocol (e.g., date range). After receiving the proposed search terms, the receiving party shall provide the Producing Party with comments, proposed revisions, and responses to such search terms. The Producing Party and receiving party will meet and confer over those search terms. The Producing Party reserves the right to review any and all documents hitting on any search terms for responsiveness and privilege, consistent with any objections and responses to discovery served upon that party.

---

[1] If the non-custodial data source is a shared folder, the names of the folder paths should be disclosed.

**E. Paper Records:** Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format:

1.  TIFFs. All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11 inch page size, except for documents requiring higher resolution or different page size.

2.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The Parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents. For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages with Post-it notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-it.

3.  Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/metadata load file (.DAT). Each image file should have a unique file name which shall be the Bates number of the page.

4.  Objective Coding Fields. The following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; and (6) source location/custodian.

5.  OCR Text Files. Document level OCR should be provided as a separate text file. The file name of each text file should correspond to the file name of the first image file of the document with which it is associated. The text files will not contain the redacted portions of the documents. OCR software should be set to the highest quality setting during processing. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

**F.    Electronically Stored Information:**  The Parties will produce electronically stored information ("ESI") in TIFF format according to the following specifications:

1.    All TIFF formatted documents will be single page, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11 inch page size, except for documents requiring different resolution or page size.

2.    An image load file, in standard Opticon format, showing the Bates number of each page and the appropriate unitization of the documents, will accompany all document images.

3.    Each imaged version of an electronic document will be created directly from the original electronic document.

4.    Images of JPG, PNG, GIF or other image file types shall be produced in color.

5.    TIFFs shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set out above.  Word documents that have tracked changes or comments shall be imaged and produced in color and with margin comments visible in the image.  In addition, upon written request that identifies a reasonable number of individual documents at issue by Bates number, a party shall produce color images for those documents.  Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting of 75% or higher. In the event that a TIFF file is objectively illegible or difficult to read and the Receiving Party identifies the document with particularity by Bates number, the Producing Party agrees to provide either (i) a new image that is legible to read, or if no legible image can be provided, (ii) a native version of the document unless good cause for withholding the native file is shown.

6.    All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and

rows.[1]   In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing.   For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

   a.  Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

   b.  In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

7.   The following metadata fields associated with each electronic document will be produced, to the extent they are available.  No party shall be required to manually populate any field that does not exist as a document is maintained in the ordinary course of business.  The Producing Party shall disclose the time zone used for processing documents.

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, | X | X |

---

[2] To the extent that a Producing Party deems it not reasonably feasible to provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows in the extracted text, the Producing Party shall notify the receiving party for what categories of documents or document types it is not feasible for each production.

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| | First Name format) as available | | |
| Duplicate Custodian (or similar name) | Name of duplicate custodian(s) of email(s) or file(s) produced | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | X |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | X |
| From | From field extracted from an email message | X | |
| Author | Author field extracted from the metadata of a non-email document | | X |
| To | To or Recipient extracted from an email message | X | |
| Cc | Carbon Copy ("Cc") field | X | |

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
|  | extracted from an email message |  |  |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X |  |
| EmailSubject | Subject line extracted from an email message | X |  |
| Importance | High Importance — indicates Priority E-mail message. | X |  |
| Filename | File name — Original name of file as appeared in original location |  | X |
| Title | Title field extracted from the metadata of a non-email document |  | X |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | X |  |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or | X |  |

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| | Date Recvd, but not both) | | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | X |
| DateLastModified | The application recorded time on which the document was last modified | | X |
| TimeSent | Time e-mail was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | X | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | X | |
| FileExtension | The file extension for the document | | X |
| FilePath | File path storage location of the document or email if the source application allows for the creation of | X | X |

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| | folders | | |
| MSGID | E-mail system identifier assigned by the host e-mail system. This value is extracted from parent message during processing | X | |
| NativeLink | Relative path to any files produced in native format | X | X |
| TextLink | Relative path to any OCR/extracted text files in the production set | X | X |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X |
| Confidentiality Designation | Confidentiality Designation for produced documents | X | X |
| Redaction | Identifies if a document has been redacted | X | X |
| ProdVolume | Name of media that data was produced on. | X | X |

| | | | |
|---|---|---|---|
| HasRevisions*[3] | Y if a word processing document with revisions | x | x |
| HasComments* | Y if a word processing or spreadsheet document with comments | x | x |
| HasHiddenText* | Y if a word processing document with hidden text | x | x |
| HasHiddenSlides* | Y if a presentation document with hidden slides | x | x |
| HasSpeakerNotes* | Y if a presentation document with speaker notes | x | x |
| HasHiddenRows* | Y if a spreadsheet document with hidden rows | x | x |
| HasHiddenColumns* | Y if a spreadsheet document with hidden columns | x | x |

---

[3] With respect to these "Has" fields, Defendants reserve the right to object to the provision of these fields to the extent such filed do not exist s within the underlying native application and/or that their respective processing tools is not able to generate these fields without undue burden.

| HasHiddenWorksheets* | Y if a spreadsheet document with hidden worksheets | x | x |
|---|---|---|---|

8.   Bates Numbers. Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.

9.   Parent-Child Relationships.  For e-mail families, the parent-child relationships (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved.  Absent a claim of privilege, responsive as well as non-responsive or irrelevant family members will be produced consecutively with the responsive related parent e-mail. Notwithstanding the forgoing, a producing party may file a motion to seek relief from the production of non-responsive attachments.

10.   Family Groups. A document and all other documents in its attachment range, e-mails with attachments, and files with extracted embedded OLE documents all constitute family groups. If any member of a family group is produced, all members of that group must be also be produced, or else logged as privileged or otherwise withheld for relevance, and no such member shall be withheld from production as a duplicate.

11. Native Format Production Documents:

a.   The Parties will produce the following ESI types in native file format:

- Excel spreadsheets

- Audio/video files

- Animations

- Microsoft PowerPoint presentations

b. Any document produced in native format will be produced according to the following specifications:

(1) A unique Bates number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be:

(a) "BATES000001_HighlyConfidential.xls"

(2) The native format documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the Parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value"; (iii) the original name of the file; and (iv) a Bates number.

(3) Any file produced in native format need not be imaged. Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number and Confidential designation of the corresponding file.

c. Notwithstanding the foregoing, redacted Excel spreadsheets and PowerPoint presentations will be produced as TIFF images or as otherwise provided Paragraph H below.

12. The Parties will meet and confer on the production format of less-commonly used file types, such as CAD, GIS data, materials and prototypes testing, etc.

## G. Data Load Files/Cross-Reference Files

Fielded data should be exchanged via a document-level-database load file in one of two delimited formats: either standard Concordance (DAT) or comma delimited (CSV). All image data should be delivered with a corresponding image load file in one of three formats; standard IPro (LFP), Opticon (OPT) or Summation (DII). The total number of

image files referenced in the image load file should match the total number of images in the production delivery.

**H.   Deduping Documents, De-NISTing Documents, and Most Inclusive Email Productions**

1.   Each Party may dedupe ESI globally for exact duplicate documents (based on MD5 or SHA-1 hash values at the parent document level).  This will result in the Producing Party needing to produce only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "Duplicate Custodians" (or similar name) field.  The Parties shall de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-level email documents against top-level email documents.  De-duplication shall not break apart families.

2.   Common system and program files as defined by the NIST library need not be processed, reviewed or produced.

**I.   Redactions for Irrelevant Content**

A Producing Party reserves the right to move the court for leave to determine if certain competitively sensitive non-relevant content within an otherwise responsive document can be redacted on the grounds that the information is beyond the scope of relevance under Rule 26.

**J.   Database Data**

When responsive information is located in a database or structured, aggregated or application data, the Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application.  Defendants agree, in good faith and pursuant to any requirements under the Federal Rules of Civil Procedure, to discuss information fields and table names in structured data upon a reasonable request by Plaintiffs during the meet and confer process.

**K.  Proprietary or Third-Party Software**

To the extent that information produced pursuant to this Protocol cannot be rendered or viewed without the use of proprietary or third-party software, the Parties shall meet and confer to determine if an agreement on production format can be reached.

**L.  Alternative Formats**

Notwithstanding the Parties' stipulations herein, upon reasonable request made by the receiving party, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this order.

**M. Exception Files**

The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems ("Exception Files").  If requested, the Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files.

**N.  Password Protected Files**

The Parties will use reasonable efforts and standard industry practices to try to access the content of those files.

**O.  Production Media**

The Parties shall produce documents electronically via a secure File Transfer Protocol ("FTP") rather than through physical media (e.g. CD, DVD, or hard drive), unless such electronic transmission is impracticable, or the otherwise Parties agree on a different method of transmission.

**STIPULATED AND AGREED TO ON _____, 2022.**

Dated:  _, 2021                                  /s/_____

                                                 *Counsel for Plaintiffs*

Dated:  _, 2021                                  /s/_____

Dated:  _, 2021                                  /s/_____

**IT IS SO ORDERED:**

_____
Hon. Aleta Trauger
United States District Court Judge

**DATED:**